BRISTOL *v.* MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.

1. APPEAL AND ERROR—ACCIDENT INSURANCE—HEARSAY—FALL.
    In beneficiary's action under accident policy, tried without a jury, admission of plaintiff's hearsay testimony as to fall sustained by insured was not prejudicial where another witness gave competent testimony as to fall.

2. EVIDENCE—RES GESTAE—HEARSAY—ACCIDENT.
    In action on accident policy testimony of witness who had lived in apartment below insured's that when witness sought

to learn why water came through ceiling early in the morning she found insured clinched between bathroom door and bed with a swelling on the side of her head and five minutes later, when able to talk, stated she was taking a bath and fell, was admissible as part of the *res gestae*.

3. INSURANCE—ACCIDENT—PROXIMATE CAUSE—EVIDENCE.

In nonjury action on accident policy covering insured who had been suffering from chronic parenchymatous nephritis with uremia when she struck her head in fall, evidence as to whether proximate cause of death was brain concussion was sufficient to support judgment for plaintiff.

4. EVIDENCE—EXPLANATION OF ADMISSIONS.

In death beneficiary's action against insurer under accident policy wherein it appears that plaintiff, unrelated to insured, had made a pretrial admission that he had paid the premium, his testimony that insured had furnished the money was admissible.

5. INSURANCE—ACCIDENT—PREMIUM—BENEFICIARIES.

An insured who actually paid premium on an accident policy may designate as beneficiary one not having an insurable interest in insured's life.

6. APPEAL AND ERROR—QUESTION FOR TRIER OF FACTS—ACCIDENT INSURANCE—HEALTH OF INSURED.

In nonjury action on accident policy, wherein defense was interposed that insured had a fatal disease at the time the policy was taken out which was a basis for cancellation because of misstatement materially affecting the risk, the state of insured's health was a question of fact for the trial judge (3 Comp. Laws 1929, § 12444).

7. SAME—FINDING OF COURT—GREAT WEIGHT OF EVIDENCE—MISSTATEMENT AFFECTING RISK UNDER ACCIDENT POLICY.

Finding of trial judge in nonjury action against insurer under accident policy that insurer was not entitled to have policy cancelled because of alleged misstatement materially affecting the risk was not against the great weight of the evidence (3 Comp. Laws 1929, § 12444).

8. INSURANCE—PROXIMATE CAUSE—TERMINAL DISEASE—ACCIDENT.

In action under policy insuring against death resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means, if several causes concur to produce death and each claim can be supported by

competent evidence, the presence of a terminal disease at the time of a fatal accident does not bar recovery as a matter of law, the case being one for the trier of the facts.

9. SAME—ACCIDENT—PROXIMATE CAUSE.

Under policy insuring against accidental death and expressly excluding liability for death resulting directly or indirectly from bodily infirmity, illness or disease, the accident itself must have been sufficient to cause death.

10. APPEAL AND ERROR—ACCIDENT INSURANCE—CAUSE OF DEATH—QUESTION FOR TRIER OF FACTS.

In nonjury action on policy insuring against death resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means, for death of insured from brain concussion sustained in a fall, whether presence of a terminal disease at time of fatal accident barred recovery was for trial judge.

Appeal from Wayne; Murphy (George B.), J. Submitted January 12, 1943. (Docket No. 108, Calendar No. 42,195.) Decided April 6, 1943.

Assumpsit by O'Brien G. Bristol against Mutual Benefit Health & Accident Association, a Nebraska corporation, on a policy of life insurance. Judgment for plaintiff. Defendant appeals. Affirmed.

*Loomis, Jones, Piper & Colden,* for plaintiff.

*Clifford M. Toohy,* for defendant.

BUTZEL, J. O'Brien G. Bristol was the beneficiary named in an insurance policy issued to Fannie Hampton by defendant on November 13, 1939. The policy provided for insurance against loss of life "resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely accidental means." It further provided for payment of $1,500 for loss of life if the insured sustained bodily in-

juries which "injuries shall, independently and exclusively of disease and all other causes, continuously and wholly disable the insured from the date of the accident" and result within 13 weeks in death.

Plaintiff's decedent was a domestic worker doing day work from house to house. Plaintiff was the secretary of the Universal Negro Improvement Association to which Miss Hampton belonged. Plaintiff obtained an application form for the insurance from defendant's soliciting agent, had it signed by Miss Hampton and returned it to defendant's agent. The application was annexed to and became part of the policy issued by defendant. Plaintiff as beneficiary in the application was described as "friend." In the application Miss Hampton stated that she had never had any kidney, heart disease, high or low blood pressure or certain other ailments; that she had not had any local or constitutional diseases within the past five years; and that the application was to be issued solely and entirely in reliance upon the statements made in the application. No medical examination was asked or had. It was conceded by defendant's counsel at the pretrial hearing of the case that plaintiff had paid the premium of $8.50, which became due on March 1, 1940.

On January 2, 1940, Miss Hampton became so ill that Dr. Joseph C. Isaacs ordered her to bed where she remained under his care until her death on April 1, 1940. Plaintiff was permitted to testify, notwithstanding defendant's objection, that Miss Hampton had a fall on March 19, 1940, about 5 o'clock a.m. Plaintiff, however, was not present and did not learn about the accident until 9 a.m. the same day. However, such testimony was cumulative and was not prejudicial in view of the fact that another witness testified that she lived below Miss Hampton's apartment and that when water began running

through her ceiling about 5:30 or 6 a.m., she immediately went upstairs and found decedent "clinched" between the bathroom door and her bed with a swelling on the side of her head, and when the witness asked her what had happened, Miss Hampton could not say. It was five minutes before Miss Hampton was able to talk and she then made the statement that she was taking a bath and fell and struck her head and face. The testimony of this witness was admissible as part of the *res gestae*.

The proofs of death were filed with defendant over three weeks after the date of the death. They included affidavits of plaintiff, Dr. Isaacs, decedent's employer and the undertaker, V. A. Bristol, a brother of plaintiff. Dr. Isaacs stated in his affidavit that the second and contributing cause of death was chronic parenchymatous nephritis with uremia. In answer to the question whether any disease or cause other than the injury referred to operated as a complication or contributed to produce death, the doctor first wrote "yes," and then crossed it out and wrote, "no." In answer to the next question, "If so, what?" he wrote: "Pulmonary edema, uremia." Dr. Isaacs testified that he called on decedent 9 times in January, four times in February, then on March 8th, March 18th and every day thereafter until the date of her death. All of the physicians in the case, including plaintiff's expert, agree that when a patient has uremia, she is in the terminal stages of chronic diffuse nephritis. Witness for defendant stated that the latter disease when accompanied by uremia usually lasted for a year, and that the disease was present for at least 6 or 8 months prior to death. Dr. Isaacs further stated that he discovered on January 3, 1940, from a laboratory test that decedent had nephritis with ure-

mia, and that on the same date she had higher than normal blood pressure. The death certificate was made out and given to plaintiff's brother, the undertaker. The deputy registrar of the health department of the city of Detroit testified that the undertaker told him that he had destroyed the death certificate. It was shown that the death certificate contained the statement that the cause of death was chronic parenchymatous nephritis and that the contributing cause was a concussion injury to the brain from the fall. Dr. Isaacs testified that he mailed the death certificate to the board of health, statistical department.

On April 4, 1940, Dr. Love, a physician on the staff of the Wayne county coroner's office, performed an autopsy. He testified that he found the heart diffusely enlarged, that he found evidence of diffuse nephritis with some sclerosis of the arteries and that there were no black or blue marks or any swollen condition on any part of the head. His autopsy report showed that the cause of death was concussion of the brain following injury to the head, terminal cerebral edema and pulmonary edema. He was absolutely positive in stating that the cause of death, irrespective of any disease, was concussion to the brain. While he did not belong to the Universal Negro Improvement Association, he testified that he was a friend of one of plaintiff's attorneys with whom he had discussed the case; that he usually received $50 minimum fee as an expert and that he expected to be paid in this case.

The case was tried before the circuit judge without a jury. The judge found that the proximate cause of insured's death was the concussion and rendered judgment in plaintiff's favor for $1,562.50. While there may be doubt in the minds of some of us, on examining the record, as to the correctness

of the finding of the trial judge, we are appreciative of the fact that he saw the witnesses and judged their credibility and we shall not disturb his findings.

Since plaintiff was not related to decedent, it is claimed that his pretrial admission that he paid the $8.50 insurance premium is sufficient to void the policy. At the trial plaintiff did not deny the correctness of his admission but further testified that the money had been furnished him by decedent. This testimony served only to explain the admission and was properly admitted. Insured, having actually paid the premium, could designate as beneficiary one not having an insurable interest in her life. *Dolan* v. *Supreme Council Catholic Mutual Benefit Ass'n,* 152 Mich. 266 (16 L. R. A. [N. S.] 555, 15 Ann. Cas. 232).

It is claimed also that Miss Hampton had a fatal disease at the time the policy was taken out, which is basis for cancellation because of misstatement materially affecting the risk. 3 Comp. Laws 1929, § 12444 (Stat. Ann. § 24.280). The state of insured's health prior to January 3, 1940, was a question of fact for the trial judge. The only admissible evidence on the point was the testimony of defendant's expert witness, which was conjectural. While the witness did testify that the disease was present for 6 or 8 months, assuming certain conditions, he stated on cross-examination that:

"It is difficult, unless I myself made the diagnosis, to state how long a disease lasted, so any testimony I might give like that isn't even a guess."

In view of this statement we cannot say that the finding of the trial judge was against the great weight of the evidence.

The important question in the case is whether the presence of a terminal disease at the time of a fatal accident bars recovery. In those instances where several causes concur to produce death, the answer depends upon the language of the policy. If the insuring clause is similar to that in the policy herein relied upon, and each claim can be supported by competent evidence, the decision of the jury is controlling. *Hoff* v. *Mutual Life Insurance Co.*, 266 Mich. 380; *Kangas* v. *New York Life Ins. Co.*, 223 Mich. 238. If the policy expressly excludes liability for death resulting directly or indirectly from bodily infirmity, illness, or disease, the accident itself must have been sufficient to cause death. *Rathman* v. *New Amsterdam Casualty Co.*, 186 Mich. 115 (L. R. A. 1915 E, 980, Ann. Cas. 1917 C, 459); *Budzinski* v. *Metropolitan Life Ins. Co.*, 287 Mich. 495. Under the instant policy there would thus be recovery if death resulted from the head injury alone or from the injury in conjunction with other causes. Recovery under such a policy never depends upon the nature of the preexisting disease, whether temporary or terminal. Other courts have gone so far as to impose liability even where a fatal disease concurred with only a slight injury on the ground that if the accident accelerated death, then death resulted independently of all other causes. *Hall* v. *General Accident Assur. Corp.*, 16 Ga. App. 66 (85 S. E. 600); *Fidelity & Casualty Co.* v. *Meyer*, 106 Ark. 91 (152 S. W. 995, 44 L. R. A. [N. S.] 493). We need not discuss the wisdom of this rule in view of the finding that the head injury caused the death. There was nothing in the policy disclaiming liability if the insured were suffering from a terminal disease and death would have ensued shortly after and independently of the accident. If the insurance company desired to exclude liability under such con-

ditions, it could easily have done so by appropriate words. It saw fit instead to sell an attractive policy for a modest sum to people of limited education and without requiring a medical examination.

The judgment is affirmed, with costs to plaintiff.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUSH-NELL, and SHARPE, JJ., concurred. WIEST, J., concurred in the result.