SCHARMER *v.* OCCIDENTAL LIFE INSURANCE COMPANY.

INSURANCE—GROUP LIFE, HEALTH AND ACCIDENT POLICY—COVERAGE
—ARTERIOSCLEROSIS.

Coverage under group life, health and accident insurance policy which specifically excluded coverage of death from "bodily or mental infirmity, disease of any kind" did not permit recovery for death of insured, where the primary cause of his death was arteriosclerosis, a disease prerequisite for a heart attack, and the lifting of a manhole cover, even if it be construed as having been an accident, would not have caused the death if the insured had not been affected with such disease.

REFERENCES FOR POINTS IN HEADNOTES
29 Am Jur, Insurance § 996.
Arteriosclerosis as affecting right to recover under accident policy or accident feature of life policy. 3 ALR 1304; 82 ALR 1411.

Appeal from Muskegon; Fox (Noel P.), J. Submitted June 12, 1957. (Docket No. 2, Calendar No. 47,113.) Decided September 4, 1957.

Action by Clara Scharmer against the Occidental Life Insurance Company for death benefit on group insurance policy on death of husband. Verdict and judgment for plaintiff. Defendant appeals. Reversed and judgment entered for defendant.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Jerry S. McCroskey,* of counsel), for plaintiff.

*Smedley & Spaniola,* for defendant.

Sharpe, J. On or about November 1, 1948, the Occidental Life Insurance Company issued to Frederick W. Scharmer a certificate of group life, health and accident indemnity through Local No. 113, UAW-CIO, under a plan whereby Frederick W. Scharmer and his employer, Continental Motors Corporation, each contributed a share of the premiums required to be paid for said policy. It was provided in the policy that Frederick W. Scharmer's beneficiary would receive $3,000 if Frederick W. Scharmer "suffers directly and independently of all other causes, bodily injury effected solely through external, violent and accidental means, which results in death," and "This policy does not insure * * * if the death * * * shall directly or indirectly, wholly or partly, result from * * * bodily or mental infirmity, disease of any kind, or as a result of medical or surgical treatment therefor."

The record in this case shows that Frederick W. Scharmer was 64 years of age and had worked for Continental Motors Corporation for about 30 years. He was married to plaintiff, Clara Scharmer, for 27 years. He apparently was in good health for a man

of his age. He worked on March 28, 1955, and returned home from work about 3:45 p.m. After dinner on that evening he complained about a "pressing in his chest and a burping." He slept normally that night and went to work the next day and continued working the following 2 days and a part of Friday, April 1st, during which time he complained of the burping sensation and pressing in his chest. On the same day Scharmer went to the company's first-aid, and from there he went home. Mrs. Scharmer took him to Dr. DeVere Boyd, a specialist in internal medicine, including heart disease. A technician took an electrocardiogram (E.K.G.), which showed only minor changes from normal, but no evidence of coronary thrombosis. Scharmer was told to go home and rest half an hour after each meal. Scharmer remained home for the week end until Tuesday, April 5th.

On April 5th Scharmer was admitted to a hospital. On Wednesday, April 6th, an electrocardiogram was taken, but it failed to show any change from the electrocardiogram taken on April 1st. At 1:35 a.m. on Saturday, April 9th, Scharmer suffered a severe pain in the chest and went into shock. An electrocardiogram taken shortly thereafter revealed evidence of a fresh posterior myocardial infarction (cutting off a part of the blood supply to the heart), revealing changes not present before, showing a vessel had clotted and part of the heart wall was robbed of blood. Scharmer died at 9:50 p.m. on April 9, 1955.

An autopsy was performed and it was found that death was due to coronary occlusion, commonly known as a heart attack. Doctors DeLeeuw and Boyd agreed that Scharmer had not suffered any external or violent injuries and that his death was due to natural causes, as opposed to death by violence.

Dr. Boyd testified over objection that Scharmer told him on April 5th that he felt his first pain on March 28th when he lifted a manhole cover. Dr. Boyd testified that there was a possibility that the exertion in lifting the cover was a precipitating factor in his heart attack. However, there was no direct testimony that Scharmer lifted the manhole cover or strained himself in any way. Dr. Boyd further testified:

"Scharmer had arteriosclerosis in the arterial vessels for a number of years; that he had a blocking of one of the coronary arteries by a clot with the result a part of the heart died because it did not get any more blood supply and finally it let blood from the heart out into the sac surrounding the heart, finally resulting in death. * * *

"Mr. McCroskey: What effect, Doctor, does arteriosclerosis, this normal amount of arteriosclerosis this man had, average for his age, what effect does that have on predisposing, or setting up the stage for such a heart attack as this?

"A. It's practically a prerequisite, it has to be there. * * *

"Mr. Scharmer had generalized arteriosclerosis. He had arteriosclerotic heart disease and that is what he died from. * * *

"Q. He would not have had this death by heart disease, he would not have had that coronary occlusion, if he had not had arteriosclerosis, would he?

"A. That's correct.

"Q. The basis of this whole thing is this disease that he was suffering?

"A. That's the basic thing, yes. Arteriosclerosis is a disease of the arteries—a disease of the circulatory system.

"Q. In view of what you've said, Doctor, concerning there being a connection between the exertion—and I'm assuming now, making the same assumption that Mr. McCroskey did, that he did try to move a manhole cover, but there is no evidence of that up

to this time, if he had not been suffering from arteriosclerosis, if he had not had heart disease, would the effort, or the energy he put in moving that manhole cover, had any effect upon him?

"*A.* It would not have been likely to.   *   *   *

"*A.* My interpretation, or what at least is my idea of a natural death, I think it's a poor term, but nevertheless it implies that death is caused by a process of age, or disease, as contrasted to death from violence, or any injury applied externally. *   *   *

"*A.* As I made my examination and gave Scharmer these different tests I found no evidence whatsoever of any external injuries and I found no evidence that he had suffered any violence."

Dr. Henry DeLeeuw testified:

"I believe the cause of Frederick Scharmer's death was a coronary occlusion, commonly known as a heart attack.   *   *   *

"Scharmer had arteriosclerosis in his blood vessels.   *   *   *

"Mr. Scharmer came into the hospital apparently suffering from what was thought to be pneumonia. He was placed in an oxygen tent. A cardiograph was taken that day. It did not show any abnormalities. They took another cardiograph on the third hospital day and it still did not show any abnormalities. On the fourth day the cardiograph revealed a fresh posterior myocardial infarction. The patient progressed downhill and expired on the fifth day.   *   *   *   In making my examination I did not find any abrasions or any evidence of violence or any external marks, scars, or anything like that. *   *   *   I found no scars or bruises to show he had been physically or bodily hurt outside or in an accident.   *   *   *

"Arteriosclerosis is a disease of the arteries. *   *   *

"*Q.* Well, such a disease is a bodily infirmity, then?

"*A.* We never speak of it (arteriosclerosis) as a bodily infirmity, but I suppose it must be. It is primarily a disease of the arteries, it is a disease.

"Arteriosclerosis is a disease of the circulatory system. A heart attack is a lapse of the circulatory system.      \*      \*      \*

"Scharmer's death was not a violent death. His heart attack killed him."

Dr. Robert Fles testified:

"There's little causal relationship between exertion and a so-called coronary occlusion, or, as we call it, the associated thing, myocardial infarction, \*      \*      \* has nothing to [do] with this case.      \*      \*      \* More of mine have had them in their sleep, or have had them just walking across a parking lot.      \*      \*      \*

"In my opinion arteriosclerosis is a disease of the blood vessels, it is a disease associated with the aging process.      \*      \*      \*

"*Q.* Then you agree with Dr. DeLeeuw that arteriosclerosis is a prerequisite to a heart attack?

"*A.* That's my opinion. I only know—I didn't hear Dr. DeLeeuw testify.      \*      \*      \*

"*Q.* In other words, what I'm getting at is this—if Scharmer hadn't had this arteriosclerosis, he never would have had this heart attack, is that it?

"*A.* That's the way I feel about it, yes."

The cause came on for trial, and at the close of plaintiff's case defense counsel made a motion for a directed verdict for the reason that Scharmer's death was not caused directly or independently of all other causes by bodily injury suffered solely through external, violent and accidental means, and his death was caused directly or indirectly, wholly or partially by bodily infirmity or disease. The trial court denied the motion and submitted the cause to the jury who returned a verdict in favor of plaintiff.

Defendant company appeals and urges that the court committed reversible error in permitting Dr.

Boyd to testify as to what Scharmer told him about the pain he suffered while lifting the manhole cover. For the purpose of this case we can assume that the trial court was right in admitting the testimony of Dr. Boyd (but we do not so hold), as the cause can be decided under the admitted facts as applied to the terms of the insurance policy. Defendant urges that Scharmer's death was not caused directly or independently of all other causes from bodily injury. We note that the policy states, "This policy does not insure  *  *  *  if the death  *  *  *  shall directly or indirectly, wholly or partly, result from  *  *  *  bodily or mental infirmity, disease of any kind, or as a result of medical or surgical treatment therefor." The evidence shows that arteriosclerosis (heart disease) was the primary cause of Scharmer's death (Dr. DeLeeuw) and that arteriosclerosis is classified as a disease, is a prerequisite for a heart attack, and that Scharmer died from a heart attack (Dr. Boyd).

In *Budzinski* v. *Metropolitan Life Ins. Co.*, 287 Mich 495, Budzinski took out an insurance policy which insured against death resulting:

" 'Directly and independently of all other causes from bodily injury, effected solely through external, violent and accidental means.' It also provided that, 'The additional accidental death benefit shall not be payable if the insured's death results  *  *  *  directly or indirectly from infirmity of mind or body; from illness or disease, or from any bacterial infection other than bacterial infection occurring in direct consequence of accidental and bodily injuries.' "

The facts of that case were:

"The insured was injured on January 20, 1936, when he sustained a crushing of the tips of 2 fingers on his left hand. Following the accident, he suffered extreme pain until his death the next day from a

cerebral hemorrhage. Defendants offered no proof but were content to rely upon the medical testimony adduced by plaintiffs which established that the intense pain caused an increase in blood pressure which became so great as to result in the bursting of a blood vessel in the brain and the hemorrhage which followed. The proof showed deceased to be afflicted with cerebral arteriosclerosis in a marked degree for a man of his years, and it was conceded that due to the consequent weakness of the blood vessels the increased pressure of the blood due to the suffering was sufficient to cause a rupture, resulting in death. It was also conceded, that had it not have been for the existence of the cerebral arteriosclerosis, the accident sustained would not have been sufficient to have caused death."

In that case we rejected the theory that the beneficiary can recover if the accident was the efficient, dominant, proximate cause of the disability or death, although a pre-existing disease may have contributed to the result. The majority of the Court stated (p 504):

"In *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark 91 (152 SW 995, 44 LRA NS 493), the court said:
" 'It is the duty of courts to give such construction to a policy, if the language used fairly admits, as will make it of some substantial value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury. If liability is to depend upon the physical condition of the assured as contributing in some degree to death, then it should be so stated plainly in the policy.'
"From my examination of clause 2 of the policies, I am constrained to hold that there is no liability in the instant cases as bodily infirmity or disease was a *contributing cause* of the assured's death. The policies are unambiguous and admit of no other construction." (Emphasis supplied.)

In *Bristol* v. *Mutual Benefit Health & Accident Association,* 305 Mich 145, we had occasion to construe a policy somewhat similar to the policy in the case at bar. We there said (p 152):

"The important question in the case is whether the presence of a terminal disease at the time of a fatal accident bars recovery. In those instances where several causes concur to produce death, the answer depends upon the language of the policy. If the insuring clause is similar to that in the policy herein relied upon, and each claim can be supported by competent evidence, the decision of the jury is controlling. *Hoff* v. *Mutual Life Insurance Co.,* 266 Mich 380; *Kangas* v. *New York Life Ins. Co.,* 223 Mich 238. If the policy expressly excludes liability for death resulting directly or indirectly from bodily infirmity, illness, or disease, the accident itself must have been sufficient to cause death. *Rathman* v. *New Amsterdam Casualty Co.,* 186 Mich 115 (LRA1915E, 980, Ann Cas 1917C, 459); *Budzinski* v. *Metropolitan Life Ins. Co.,* 287 Mich 495."

In the case at bar we will again assume that Scharmer suffered an accident while lifting the manhole cover, but it is clear that at the time of the "accident" he was suffering from a pre-existing disease and that the accident would not have caused his death if he had not been affected with the disease. It thus follows that the disease was a contributing factor, if not the primary cause of his death. In order that plaintiff may recover she must show that Scharmer's death was suffered directly and independently of all other causes. The rule announced in the *Budzinski Case* is controlling.

The trial court was in error in failing to grant defendant's motion for a directed verdict. The judgment of the circuit court is reversed, and a judgment of no cause of action will be entered in

favor of defendant.   Defendant may recover costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.