### NICKOLA *v.* UNITED COMMERCIAL TRAVELLERS OF AMERICA.

1. Insurance—Construction of Accident Policy.

    A construction of policy insuring "death due to accidental means alone and independent of all other causes" should be placed upon the policy as fair and reasonable as the limiting language will permit.

2. Same—Accident—Proximate Cause.

    The ultimate test of liability under an accident insurance policy is whether the accident was the efficient, proximate cause of the injury resulting in death.

3. Same—Accident—Evidence.

    Finding of trial court in nonjury action on accident insurance policies that accident sustained by insured while pushing his stalled car brought about a gross hematuria of a pre-existing, undiscovered cancerous condition of the bladder, followed by complications and developments including a coronary thrombosis which led to his death *held,* supported by competent testimony and not against the preponderance of the evidence (Court Rule No 64 [1945]).

Appeal from Genesee; McGregor (Louis D.), J. Submitted February 4, 1964. (Calendar No. 26, Docket No. 50,284.) Decided April 6, 1964.

Assumpsit by Mary Nickola against United Commercial Travellers of America, a foreign insurance corporation, for benefits on insurance policies for accidental death. Judgment for plaintiff. Defendant appeals. Affirmed.

*Sherman M. Bean* and *Philip Elliott,* for plaintiff.

*Gault, Davison & Bowers* (*Matthew Davison, Jr.,* of counsel), for defendant.

References for Points in Headnotes

[2] 29A Am Jur, Insurance § 1162.
[3] 29A Am Jur, Insurance § 1921 *et seq.*

O'Hara, J.   Tried to the court without a jury was the issue of plaintiff's entitlement to the death benefits under 4 accident insurance policies with a total face value of $16,500.

Our scope of review is limited: (1) Was there competent evidence to sustain the trial judge's finding of fact? (2) Was such finding of fact against the great weight of the evidence? (3) Was any error of law committed?

Plaintiff's insured as above indicated, on March 6, 1959, while pushing his car slipped and fell. This happened about 8:30 a.m. His wife witnessed the fall. Being apprehensive of the result, she went to his office about 9 a.m. the same morning and found him lying on a couch in apparent pain and distress. He refused, at that time, medical attention. At about 3 p.m. she returned to the office to find him hemorrhaging. She prevailed upon him to go to the doctor's office. Upon his return he was stilling bleeding internally and urinating blood. Subsequent medical examination revealed a tumor on the bladder. He was hospitalized to control the bleeding. March 8th, his condition was diagnosed as carcinoma of the bladder. On March 9th, the first of a 2-stage operation was performed. The second stage could not be completed because of uncontrollable bleeding. This required a change in operational procedure and the whole tumor, or most of it, was then removed.

The insured survived the operative procedures and his condition was post operatively satisfactory. On March 16th, he died. The immediate cause was given as a coronary occlusion resulting from a pulmonary embolism.

The trial court made the following findings of fact:

"From the evidence, this court finds that the insured experienced an accident while attempting to

push his stalled automobile and that the accident brought about a gross hematuria of a pre-existing, undiscovered cancerous condition of the bladder, which in turn, was followed by complications and developments (coronary thrombosis, et cetera) which led to his death."

The policy language with which we are concerned is:

"The benefit for death due to accidental means alone and independent of all other causes shall be $5,000."

The query is, does the testimony support the trial judge's finding that insured's death, within the meaning of the above quoted accidental death benefit, was caused by his slipping and falling on March 6th, independent of all other causes?

Only 1 doctor testified, Dr. Gerald Murphy, an osteopathic surgeon specializing in urology. We have read with particular care all of his quoted testimony. The controlling excerpt therefrom is:

"*Q.* All right. Assuming, doctor, that on the morning of the 6th of March, Mr. Nickola was pushing a car; that it was a very slippery morning; that he slipped and fell; that he pulled himself out from being partially under the car; hailed a passing automobile, walked toward the passing automobile, bent over, with his face pale, that he half crawled into the car; that he was driven to the office. a short distance away; that he got out of the car in the same manner that he got in, that is, he half crawled out of the car, went into the office, lay down most of the morning; was brought home by automobile, for lunch, refused to eat in the normal manner; was returned by car to the office, lay down again and in the afternoon passed into the stool blood and blood clots which he called his daughter to see; that he was taken to your office around 5 p.m. or shortly thereafter and you made the examination and the treatment which you

made, and later made surgery as you have described; and that he died on the 16th of March—do you have an opinion as to the connection if any that the accident that he had in the morning following the pushing of the car—do you have an opinion as to any connection between his accident and his death? * * *

"*A*. Yes.

"*The Court:* The question is: Do you have an opinion?

"*A*. Yes.

"*Q*. Yes. Well, what is that opinion? * * *

"*A*. Well, it is my opinion that the growth, that is, the size together with the bleeding from the base area that we eventually found would have to be stimulated by some sudden violent motion."

Able and persistent counsel for appellant attacked the doctor's conclusion in cross-examination. They elicited concessions, and at times the testimony seems to be a degree self-contradictory. Particularly, appellant concentrated upon the death certificate* which specified as the cause of death "Carcinoma of the urinary bladder, antecedent causes due to coronary occlusion. Other significant conditions, previous heart attacks." The thrust of the examination was that the certificate mentioned neither the "fall," i.e., accident, nor the hematuria (blood in the urine) as being related to insured's death. Appellant urges strongly that we differentiate between the "gross hematuria" which apparently followed the fall and was brought under control, and the "excessive bleeding" resulting from the necessity of an abdominal incision to reach the tumor part way through the operation.

It is quite apparent from a reading of the record that just as persuasive an inference of nonaccident related death could be made as the one reached by

---

* Two death certificates were referred to in the appendix, one contained a reference to deceased's fall, the other did not.

the trier of the facts. Which of the 2 theories to us is the more convincing is of course not to the point. The point, and only point, is whether there was competent testimony from which the court could draw reasonable inferences to support his factual finding. On this point the following questions and answers are of record:

(Cross-examination)
"*Q.* So, in other words, this hematuria from the fall was not a cause of this man's death according to your statement on one of those death certificates.

"*A.* The death, as far as I am concerned, is a combination of these unfortunate situations that occurred as a result of the initial bout with hematuria.
\* \* \*

"*Q.* In other words, the fall may have precipitated the hematuria but the hematuria never killed him?
\* \* \*

"*A.* True, sir.
(Redirect examination)
"*Q.* Now I think just before our recess you said that hematuria didn't kill him. I think you said something along that line. Did it have a connection with his death?

"*A.* I think in my opinion that the hematuria set up a succession of events that eventually led to the man's demise."

It was apparently the trial court's conclusion that the coronary thrombosis was one of those "events" which the fall set in motion. We cannot say that such conclusion was beyond reasonable inference from the medical testimony. While such a thrombosis might well have resulted from surgery done at any time and such surgery would have to have taken place once the carcinoma was discovered—such possibility does not vitiate the medical expert's testimony that the thread of causality ran directly from the fall to the necessity of surgery at the time it was in fact

performed. So construed, the "fall" and synonymously the accident was the cause of death "independent of all other causes" in that the *then* necessitated surgery was the cause of the occlusion.

We have examined with attention the cases cited by appellant but we do not find in them authority to set aside the trial court's findings. We cannot say that such finding was against the great weight of the evidence. We think the instant case is within the rule in this State as expressed in the cases cited by both counsel—*Bristol* v. *Mutual Benefit Health & Accident Association,* 305 Mich 145, and *Kangas* v. *New York Life Insurance Co.,* 223 Mich 238.

The judgment is affirmed, with costs to the appellee.

KELLY, J., concurred with O'HARA, J.

SOURIS, J. (*concurring in affirmance*). Plaintiff's right to recover under the insurance policies written by defendant depends upon whether the insured's death was "due to accidental means alone and independent of all other causes," as that language is used in defendant's policies. The trial court, sitting without a jury, decided it was.

Defendant does not contend seriously that the trial judge misconstrued the policy language. His interpretation of the quoted language was eminently correct, following as he did the interpretive guide lines set down in *Kangas* v. *New York Life Insurance Co.,* 223 Mich 238, at 243, 244:

"In most cases a policy of this character would be of little or no value to the insured if the limiting language be literally interpreted as claimed by the defendant. Death from an external injury, unless instantaneous, is usually the result of various concurring causes. The injury sets in motion other agencies and awakens dormant internal ailments

which contribute to death. These are conditions rather than causes. If such insurance contracts are to be of any value to the man who pays for the risk assumed, a construction as fair and reasonable as the limiting language will permit should be placed upon them. * * *

"There are 2 lines of decisions dealing with the interpretation of these insurance clauses. Both will be found cited in *Abbott* v. *Travelers Insurance Co.,* 208 Mich 654. They diverge on the application of the doctrine of proximate cause. I am of the opinion that the qualifying language of the contract may properly be interpreted to mean that the parties intended efficient, proximate cause to be the ultimate test of liability. This interpretation renders the contract of some substantial value to the man who pays the premium as well as to the party who carries the risk."

Our only remaining function upon review of this nonjury law case is to determine whether the judgment was against the preponderance of the evidence. Court Rule No 64 (1945). Defendant claims it was, relying upon the testimony of a Dr. Murphy. However, from Dr. Murphy's own testimony, the trial judge could have found, as he in effect did, that insured's fall precipitated hematuria which, in turn, "set up a succession of events that eventually led to the man's demise." That Dr. Murphy also testified that insured might have died anyway within 5 years from a tumor is entirely beside the point. There was no other evidence in the case to refute the competent evidence that insured's death was proximately caused by his accidental fall. Defendant having failed to persuade that the judgment was against the preponderance of the evidence, the judgment must be affirmed, with costs.

KAVANAGH, C. J., and DETHMERS, BLACK, SMITH, and ADAMS, JJ., concurred with SOURIS, J.