BERGER *v.* TRAVELERS INSURANCE COMPANY.

1. INSURANCE—ACCIDENTAL DEATH—CONSTRUCTION OF POLICY.
   Construction of an accidental death insurance policy must be as
   fair and as reasonable as the limiting language will permit
   in order to have such contracts of value to the insured.

2. SAME—ACCIDENTAL DEATH.
   An accidental injury must stand out as the prominent factor in
   the production of death of the insured in order to recover
   under an accidental death insurance policy.

3. SAME—ACCIDENTAL DEATH—PROXIMATE CAUSE.
   Parties to an accidental death insurance policy are deemed to
   have intended that the active, efficient, proximate cause of
   death be the ultimate test of liability.

4. APPEAL AND ERROR—COURT OF APPEALS—NONJURY CASES—PREPON-
   DERANCE OF EVIDENCE.
   The function of the Court of Appeals upon review of a nonjury
   action at law is to determine whether the judgment was against
   the preponderance of the evidence.

5. TRIAL—CHANGING THEORY OF CASE ON REBUTTAL.
   Plaintiff who has finished proof and rested case on one theory
   cannot, under claim of rebuttal, put in a new and different
   case as a ground of recovery.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur, Insurance §§ 258, 261.
[2, 3] 29A Am Jur, Insurance § 1162.
[4] 5 Am Jur 2d, Appeal and Error §§ 783, 841.
[5] 5 Am Jur 2d, Appeal and Error §§ 546, 591.
[6] 29A Am Jur, Insurance § 1212.
   Arteriosclerosis as affecting right to recovery under accident policy
   or accident provision of life policy.   82 ALR2d 611.
[7] 29A Am Jur, Insurance § 1956.
[8] 4 Am Jur 2d, Appeal and Error §§ 11, 17.

6. INSURANCE—ACCIDENTAL DEATH—DISEASE—FINDING OF FACT.
   Finding of trial judge in nonjury action under accidental death insurance policies that primary cause of death of insured was severe arteriosclerotic heart disease, not the automobile accident in which insured had been involved 2 weeks before his death, *held,* supported by competent evidence.

7. SAME—ACCIDENTAL DEATH—PROXIMATE CAUSE—EVIDENCE.
   It is a question for the trier of the facts to determine what the active, efficient, and precipitating cause of death may be when conflicting evidence of relations between alleged causes and effects are presented in action under accidental death insurance policies.

8. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVIDENCE—WITNESSES.
   The Court of Appeals does not substitute its judgment on questions of fact in a nonjury case unless the evidence clearly preponderates in the opposite direction, since the trial judge has the benefit of observing and hearing the witnesses.

Appeal from Muskegon; Piercey (John H.), J. Submitted Division 3 November 3, 1965, at Grand Rapids. (Docket No. 341.) Decided February 9, 1966. Leave to appeal granted by Supreme Court April 19, 1966. See 377 Mich 708, 379 Mich 51.

Declaration by Margie S. Berger against Travelers Insurance Company for death benefits under two insurance policies issued on the life of her husband who died following an automobile accident. Judgment for defendant. Plaintiff appeals. Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Vernon D. Kortering,* of counsel), for plaintiff.

*Hathaway, Latimer, Clink & Robb (H. Winston Hathaway,* of counsel), for defendant.

HOLBROOK, P. J. Plaintiff, beneficiary on two health and accident policies issued by defendant

company to her husband LuVerne C. Berger, brought action for the payment of death benefits thereunder, claiming her husband died as a result of injuries received in an automobile accident September 29, 1960.

The pertinent terms of the policies are as follows:

Policy No. R (1)—145762—$5000.

"  *  *  * against loss resulting directly and independently of all other causes from bodily injuries sustained during the term of this policy and effected solely through accidental means, subject to the provisions, conditions and limitations herein contained,  *  *  *

"A. The insurance under this policy shall not cover  *  *  * death  *  *  * caused directly or indirectly, wholly or partly,  *  *  * or (2) by any other kind of disease."

Policy GA 9500—$10,000.

"If bodily injury not hereinafter excepted, effected directly and independently of all other causes, through accidental means, shall be sustained by a member employee, while insured under this part and shall result, within 90 days of the date of accident, in any one of the losses enumerated below, the company will pay the sum set opposite such loss, but only one of the amounts so specified, the largest, will be paid for all injuries resulting from any one accident.  *  *  *

"Exclusions:—The insurance under this part shall not cover

"(1) accident, injury, death or other loss caused directly or indirectly, wholly or partly, by disease."

The trial judge, sitting without a jury, found for the defendant and plaintiff has appealed.

The facts appear to be undisputed except as to cause of death. LuVerne C. Berger, age 54, was driving in Saginaw on September 29, 1960, and had an accident whereby his vehicle hit an immovable

object and he was thrown forward causing the steering wheel to bend, and he suffered fractures of the third, fourth, fifth, sixth, seventh, and eighth left ribs, and the seventh and eighth right ribs at the interior axillary line without displacement, several broken teeth, lacerations and hematoma of the chin, lacerations of the left knee and of the inside of the lip. He was given medical attention at Saginaw and then was returned to his home at Muskegon. He saw Dr. Warren White October 1st; Monday, October 3d; Tuesday or Wednesday of same week; and again on Monday, October 10, 1960. Dr. White gave Mr. Berger medical attention and in testifying related that Mr. Berger complained of severe pain in his chest on both sides and that he appeared to be markedly depressed and tense—and he did look ill during all this time, depressed, anxious, and even agitated. Mr. Berger returned to some of his duties with his company Tuesday, October 11, 1960, but with discomfort and difficulty, and on Wednesday, October 12, 1960, left for Bay City with a junior salesman of the company and was found dead in his hotel room in the early hours of October 13, 1960.

In 1948, Mr. Berger suffered a heart attack and was hospitalized, treated for the same, and was required to refrain from working for a period of time. After about four months, he resumed his work and appeared to have recovered from the heart attack as far as being able to carry on his vocation. EKG's were periodically given and the results indicated good progress. Blood tests in the early part of 1960 showed high cholesterol content of 400.

Dr. Henry DeLeeuw, pathologist, on October 14, 1960, performed an autopsy to determine the cause of death. He found the fractured ribs and other evidence of the accident. He examined the coronary

arteries and found them to be markedly thickened, and that Mr. Berger suffered severe arteriosclerosis, and found evidence of the old area of occlusion in the right coronary artery. The lungs and the liver were abnormally heavy. Dr. DeLeeuw testified that the prime cause of death was "severe arteriosclerotic heart disease" and that he found no evidence of any current or recent infarction or occlusion. He also made 14 slides composing exhibit 3 showing two coronary arteries and myocardial sections. These were used together with the report of the pathologist by the other medical physicians testifying in the case.

Plaintiff's theory on the trial was that Mr. Berger suffered a cardiac contusion in his automobile accident of September 29, 1960, which caused his death. The two physicians testifying for plaintiff were Dr. Ray W. Kissane and Dr. Jack F. Sanders, and though disagreeing in certain aspects of the case did agree that plaintiff's decedent suffered a cardiac contusion in the accident and that it caused the heart failure which resulted in his death.

The three testifying physicians for defendant stated that in their opinion, plaintiff's decedent did not suffer a cardiac contusion. Their pertinent testimony most favorable to plaintiff appears in the record as follows:

Dr. DeLeeuw, the posting pathologist testified:

"*Q. (By Mr. Hathaway for defendant).* This man was in an automobile accident approximately 13 days before he died, Doctor, wherein he sustained the rib fractures which you mentioned. In your opinion, did this accident or the injury to the ribs have anything to do with this man's death as a causal factor?

"*A. (Dr. DeLeeuw).* Well, I think this man's primary difficulty was his severe arteriosclerotic heart disease. *Now, he had an accident about two weeks before, and of course an accident doesn't do anybody any good.* I think it is fair to say that if

this man were 23 years old, *he would have recovered without incident.*

"*Q.* Or, assuming that he did not have the heart disease, what is your opinion as to whether or not the accident would have caused death?

"*A.* Well, that is what I mean. I think he would probably have recovered.

"*Q.* So, you say the prime cause of death was what?

"*A.* Severe arteriosclerotic heart disease." (Emphasis supplied.)

Dr. Lange, consulting pathologist, testified:

"*A.* Then, he had this accident. He was getting along fairly well, he was taking good care of himself. He was working hard. He obeyed the rules that was set down for him, and he had this accident. *Well, after the accident he just forgot to obey those rules. He could not eat properly. He could not sleep. He could not rest properly. And I think that was the big factor in the old sickness coming up again. He didn't have the cardiac reserve to go through this. And, he allowed out the trauma that he had, and, therefore, the coronary arteriosclerosis again manifested itself and found himself dead in bed. That is my interpretation of the case.*

"*Q.* (*By Mr. Hathaway*). Then too, what would you say were the one or two factors or conditions which developed, which caused this man's death?

"*A.* Well, number one, the coronary arteriosclerosis and previous heart attack. Number two, the accident and the more or less indirect effects of it in changing his life, and in precipitating his myocardial failure." (Emphasis supplied.)

Dr. White, the treating physician for Mr. Berger for more than 10 years, testified:

"My answer is that I feel that the underlying heart condition had caused his death was arteriosclerotic heart disease, *but I feel that the stress he endured in the auto accident, and, had a great deal*

*to do with his demise.   It seems too fortuitous, more
than fortuitous, that he expired within two weeks
from the time that he had this automobile accident."*
(Emphasis supplied.)

After trial of the case and before decision, the
Supreme Court handed down its opinion in the case
of *Nickola* v. *United Commercial Travellers of
America* (1964), 372 Mich 600, which followed the
ruling in the case of *Kangas* v. *New York Life In-
surance Co.* (1923), 223 Mich 238.   The *Nickola Case*
was drawn to the attention of the trial judge by
plaintiff before decision and given consideration in
his opinion.

In the *Kangas Case*, the terms of the policy appear
on pp 239, 240 as follows:

" 'New York Life Insurance Company agrees to
pay to Jemina Kangas, mother of the insured, ben-
eficiary, $3,000 (the face of this policy) upon receipt
of due proof of the death of John E. Kangas, the
insured, or double the face of this policy upon the
receipt of due proof that the death of the insured
resulted *directly and independently of all other
causes, from bodily injury effected solely through
external, violent and accidental cause, and that such
death occurred within 60 days after sustaining such
injury.   This double indemnity benefit will not apply
if the insured's death resulted from self-destruction,*
whether sane or insane; from any violation of law
by the insured; from military or naval service in
time of war; from a state of war or insurrection;
from engaging in submarine or aeronautic opera-
tions; from physical or mental infirmity; *or directly
or indirectly from illness or disease of any kind.' "*
(Emphasis supplied.)

The facts in the *Kangas Case* appear to be that
plaintiff, after her son's death, made claim for double
indemnity under terms of policy because of an ac-
cidental injury to her son's left knee causing sep-

ticemia, resulting in death. The defendant claimed that plaintiff's decedent was treated for a carbuncle on the thigh of the left leg, shortly before his death, and that if the insured suffered any injury to his knee, death did not result solely from the injury, but was caused in whole or in part from infection resulting from the carbuncle. Mr. Justice McDONALD stated on pp 243–245 as follows:

"In most cases a policy of this character would be of little or no value to the insured if the limiting language be literally interpreted as claimed by the defendant. Death from an external injury, unless instantaneous, is usually the result of various concurring causes. The injury sets in motion other agencies and awakens dormant internal ailments which contribute to death. These are conditions rather than causes. If such insurance contracts are to be of any value to the man who pays for the risk assumed, a construction as fair and reasonable as the limiting language will permit should be placed upon them.

" 'We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances. People differ so widely in health, vitality and ability to resist disease and injury, that what may mean death to one man would be comparatively harmless to another, and therefore the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause

of death.' *Driskell* v. *Insurance Co.,* 117 Mo App 362 (93 SW 880).

"There are two lines of decisions dealing with the interpretation of these insurance clauses. Both will be found cited in *Abbott* v. *Travelers Insurance Co.,* 208 Mich 654. They diverge on the application of the doctrine of proximate cause. I am of the opinion that the qualifying language of the contract may properly be interpreted to mean that the parties intended *efficient, proximate cause to be the ultimate test of liability.* This interpretation renders the contract of some substantial value to the man who pays the premium as well as to the party who carries the risk.

"Applying this test to the facts in the instant case, the question is whether *pre-existing disease or an accidental external injury was the efficient, dominant, proximate cause of the death of the insured.* The testimony of the defendant tended to show that there was no external injury, but that death resulted from general infection originating from a carbuncle with which the insured was afflicted a short time prior to the alleged injury. The testimony of the plaintiff was to the effect that the infection was produced by the injury to the knee, and that the injury was the sole cause of death. Each of these conflicting claims was supported by some competent evidence. It was therefore a question for the jury to determine the cause of death, *and if both causes concurred, to say which was the efficient, dominant, proximate cause.*" (Emphasis supplied.)

In the *Nickola Case, supra,* Mr. Justice O'HARA related the findings of fact of the trial judge on pp 601, 602 as follows:

" 'From the evidence, this court finds that the insured experienced an accident while attempting to push his stalled automobile and that the accident brought about a gross hematuria of a pre-existing, undiscovered cancerous condition of the bladder,

which in turn, was followed by complications and developments (coronary thrombosis, et cetera) which led to his death.' "

And, on pp 603-605, stated as follows:

"It is quite apparent from a reading of the record that just as persuasive an inference of nonaccident related death could be made as the one reached by the trier of the facts. Which of the 2 theories to us is the more convincing is of course not to the point. The point, and only point, is whether there was competent testimony from which the court could draw reasonable inferences to support his factual finding. On this point the following questions and answers are of record:

" '(Cross-examination)

" 'Q. So, in other words, this hematuria from the fall was not a cause of this man's death according to your statement on one of those death certificates.

" 'A. The death, as far as I am concerned, is a combination of these unfortunate situations that occurred as a result of the initial bout with hematuria.  *  *  *

" 'Q. In other words, the fall may have precipitated the hematuria but the hematuria never killed him?  *  *  *

" 'A. True, sir.

(Redirect examination)

" 'Q. Now I think just before our recess you said that hematuria didn't kill him. I think you said something along that line. Did it have a connection with his death?

" 'A. I think in my opinion that the hematuria set up a succession of events that eventually led to the man's demise.'

"It was apparently the trial court's conclusion that the coronary thrombosis was one of those 'events' which the fall set in motion. We cannot say that such conclusion was beyond reasonable inference from the medical testimony. While such a thrombosis might well have resulted from surgery done at

any time and such surgery would have to have taken place once the carcinoma was discovered—such possibility does not vitiate the medical expert's testimony that the thread of causality ran directly from the fall to the necessity of surgery at the time it was in fact performed.  So construed, the 'fall' and synonymously the accident was the cause of death 'independent of all other causes' in that the *then* necessitated surgery was the cause of the occlusion."

Mr. Justice SOURIS in a concurring opinion stated on p 606 as follows:

"Our only remaining function upon review of this nonjury law case is to determine whether the judgment was against the preponderance of the evidence. Court Rule No 64 (1945).  Defendant claims it was, relying upon the testimony of a Dr. Murphy.  However, from Dr. Murphy's own testimony, the trial judge could have found, as he in effect did, that insured's fall precipitated hematuria which, in turn, 'set up a succession of events that eventually led to the man's demise.'  That Dr. Murphy also testified that insured might have died anyway within 5 years from a tumor is entirely beside the point.  There was no other evidence in the case to refute the competent evidence that insured's death was proximately caused by his accidental fall.  Defendant having failed to persuade that the judgment was against the preponderance of the evidence, the judgment must be affirmed, with costs."

In the case at hand, plaintiff's theory throughout the trial was that plaintiff's decedent suffered a myocardial contusion which was the sole cause of death.  Now, it is true that plaintiff brought to the attention of the court, prior to its decision, the ruling in the *Nickola Case*.  However, the *Nickola Case* did not change the law but rather followed the rule stated in the *Kangas Case*.

Plaintiff states that the trial judge committed error in ruling that plaintiff was required to prove

that the deceased died of a myocardial contusion before she could collect the death benefits under the policies. This claim is based upon the following quote from the trial judge's opinion:

"A careful study and review of all of the medical testimony given by the five physicians in this case leads me to the conclusion that to say that the plaintiff has sustained the burden placed upon her of proving that the deceased died of a coronary contusion would be against the great weight of evidence."

Plaintiff, having selected her theory upon which she based her right to recovery and the case having been submitted the same could only have been reopened upon proper cause shown and by order of the court. See *Hartley* v. *A. I. Rodd Lumber Co.*, (1937), 282 Mich 652, p 658, wherein it is stated:

"But the rule is that when plaintiffs have finished their proof and rested their case on one theory, they cannot, under claim of rebuttal, put in a new and different case as a ground for recovery. *Carney* v. *Hotchkiss*, 48 Mich 276."

The trial judge made this further statement in his opinion:

"It is not easy to write an opinion which effectively deprives a widow of insurance benefits and I have no quarrel with the rule of construction reiterated by Mr. Justice Souris, on p 605 of the *Nickola Case*, in which a liberal construction of the terms of the policy were required in construing cases of this nature. However, I am not free to change facts or to manufacture nonexistent facts, and I must, of necessity, after a careful review of all of the medical testimony adduced at the hearing and contained in the depositions, reach the conclusion that the preponderance of evidence was against the plaintiff and in favor of the defendant on the cause of death. * * *

"I therefore make the following conclusion of fact: That LuVerne C. Berger died on October 13, 1960, and that the primary cause of death was severe arteriosclerotic heart disease.

"I make the following conclusion of law: That plaintiff is not entitled to recovery under insurance policy R (1) – 145762, or policy GA 9500, for the reason that both policies contain restrictions on payment where death is occasioned 'by any other kind of disease.' Severe arteriosclerotic heart disease is such a disease within the meaning of the contracts."

Although the theory of plaintiff in the trial of the case was more confined than it needed to have been under the pleadings; *i.e.,* that the injuries received from the accident caused the death of plaintiff's decedent, the statement in the opinion of the trial judge could not alter the result for the controlling question presented to the trial court for determination still remained; *viz.,* what was the efficient, dominant, and proximate cause of death of the insured? The trial judge answered saying that the primary cause of death was severe arteriosclerotic heart disease.

In 56 ALR 2d 800, 807, under "Heart attack following exertion or exercise as within terms of accident provision of insurance policy," § 2[e], appears the following:

"An insurance policy providing for the payment of stipulated sums for accidental injury or death resulting from violent and accidental means alone, directly, independently, and exclusively of all other causes, means that recovery may be had when the accident is the active, efficient, and precipitating cause which sets in motion the agencies which result in the injury or death, without the intervention of any other independent force, even though an existing infirmity of the insured may be a necessary condition to the result. *When the cause of death involves*

*the determination upon conflicting evidence of the
relations between alleged causes and effects, it be-
comes a question of fact for a jury."* (Emphasis
supplied.)

In 82 ALR 2d 611, 625, 626, § 2, under title of
Arteriosclerosis as affecting right to recovery under
accident policy or accident provision of life policy,
it is stated:

"In action to recover double indemnity under
a policy providing such benefits if death resulted
directly and independently of all other causes from
bodily injury effected solely through external, vio-
lent, and accidental means, and providing that dou-
ble indemnity would not be payable if the insured's
death resulted directly or indirectly from infirmity
of mind or body from illness or disease, where med-
ical expert testimony was conflicting as to whether
the insured died from a pulmonary embolism result-
ing from an accident, gangrene, and amputation, or
from a coronary thrombosis caused by arterioscler-
osis resulting from age, or from paralysis, the Court
in *McKenna* v. *New York Life Ins. Co.* (1946), 314
Mich 304, affirming a judgment for the plaintiff,
held the evidence sufficient to establish that the
accident, with the sequel of gangrene, amputation,
and pulmonary embolism, was sufficient to cause the
death, and that bodily infirmity or disease was not a
contributing cause of death. The Court said that the
precise question *was whether the insured's death
resulted directly and independently of all other
causes from bodily injury effected solely through
external and accidental means, or, on the contrary,
whether the insured's death resulted directly or
indirectly from infirmity of mind or body, and this
last question was answered by the trial court, sitting
without a jury, in the negative."* (Emphasis sup-
plied.)

The issue herein is the same as presented in
*McKenna* v. *New York Life Ins. Co., supra.* Under

the proofs in the case at hand, there was a definite conflict as to the cause of death—the pre-existing heart disease or the external injuries sustained in the automobile accident. That question of fact was presented under the evidence and determined by the trier of the facts. The trial judge had the benefit of observing and hearing the witnesses. This Court does not substitute its judgment on questions of fact in a *nonjury* case unless the evidence clearly preponderates in the opposite direction. *Northwest Auto Company* v. *Mulligan Lincoln-Mercury, Inc.* (1957), 348 Mich 279.

Judgment affirmed, costs to appellee.

BURNS and J. H. GILLIS, JJ., concurred.