COMMONWEALTH LIFE INS. CO.
v.
BYCK et al.

Court of Appeals of Kentucky.

Nov. 20, 1953.

As Modified on Denial of Rehearing
June 23, 1954.

William H. Abell, Ogden, Galphin & Abell, Louisville, for appellant.

Hottell & Stephenson, Raymond C. Stephenson, Louisville, for appellees.

STEWART, Justice.

On June 1, 1949, appellant, Commonwealth Life Insurance Company, issued to the police pension board of the city of Louisville a group insurance policy by the terms of which, among other things, the company agreed to pay $3,000 upon the death of any police officer of the city, and, furthermore, it bound itself to pay an additional indemnity of $12,000 if the death of such officer resulted within one year "directly and independently of all other causes" from an injury received in line of duty after May 31, 1949, "effected solely and exclusively through external, violent and accidental means," revealed "by some mark or contusion visible on the exterior of the body."

This provision is also a part of the policy:

"(3) This Additional Indemnity shall not be payable if death occurs (2) as a result of or by the contribution of disease or bodily or mental infirmity or medical or surgical treatments therefor or infection of any nature, unless such infection was incurred through an external visible wound, sustained through violent and accidental means after May 31, 1949, * * *."

On March 4, 1951, Officer James J. Merrifield, age thirty-eight, was violently kicked in the abdomen and felled to the ground by a drunken prisoner he and a fellow officer had in custody. As Merrifield attempted to rise he was again struck and knocked down by the prisoner. On the following day Merrifield, having complained the rest of the previous night about pains in his side, went to see his family physician, Doctor Fred W. Rulander, who examined him and found a hemorrhagic area in the stomach wall and an X-ray showed a large mass pressing upon the right side of the stomach which the doctor thought was a splenic enlargement. He was sent to St. Anthony's Hospital in Louisville on March 7th, but no treatment was administered to him. On the next day he returned to his duties.

There appears to be some dispute as to whether Merrifield suffered any between the day he resumed his job and the day he was hospitalized again on June 20, 1951. From the last mentioned date his condition grew steadily worse and Doctor Rulander, who continued waiting on him, called in Doctor A. T. Hurst, a specialist in internal medicine, and Doctor J. A. Bowen, a specialist in urology, as consultants. His ailment was diagnosed by the two specialists as a polycystic condition of the kidneys which disease, over a period of time, destroys the tissue of these organs to such an extent that they eventually cease to function. There is no known cure for this malady. Merrifield died on July 16, 1951, and the final cause of his death, signed by Doctor Rulander, was entered on his hospital record as heart failure, induced by uremia, a poison passed into the body as a result of bilateral cystic kidneys. The accident of March 4th was not mentioned in the report. This diagnosis was verified by an autopsy performed by Doctor P. W. Cummings, the pathologist at St. Anthony's Hospital, who found both kidneys polycystic in an advanced stage, so much so that the right kidney weighed 5 pounds, or ten times the weight of a normal kidney, while the left kidney weighed 10 pounds, or twenty times the weight of a normal kidney.

The $3,000 death benefit provided by the policy was promptly paid by appellant. This suit was instituted by the pension board of the city of Louisville and the widow of the deceased to recover the additional $12,000 indemnity which appellant refused to pay, relying upon the defense that Merrifield's death was caused or at least contributed to by the polycystic kidney disease above men-

tioned. . At the close of the evidence appellant moved for a peremptory instruction, which was refused, and the trial court then submitted the case to the jury which rendered a verdict in the sum of $12,000 for appellees. On this appeal, the company first contends under the evidence that it was reversible error not to direct a verdict in its favor. We must examine the testimony in order to resolve this issue.

At the outset, appellees sought to prove that the deceased, prior to March 4, 1951, was in apparent good health. Captain Priest M. Fry, a member of the pension board and of the city police force, testified that Merrifield had been one of the most active and able men on the force, and for this reason he had been assigned to the toughest districts. Captain Fry stated he had never observed any signs of illness previous to the date just mentioned. This testimony was corroborated by Officer John Hampton, a constant companion of Merrifield while on duty. Department records indicated the decedent had been off only two days since 1946. Mrs. Alma Merrifield, the widow, while testifying to the activeness of her husband before his injury, also admitted that since their marriage he often "hacked, coughed * * * spit," in the morning, " * * * and when he would eat his breakfast he would try to clear his throat and couldn't and it would give him nausea."

The evidence just referred to would leave us with very little to go on were it not for the rather exhaustive medical testimony which we shall now attempt to evaluate. Doctor Rulander, who was a witness on appellees' behalf, first examined the deceased in 1938, along with Dr. Virgil Simpson, now deceased. According to this witness, the examination revealed Merrifield had albuminuria, but this was not necessarily attributable to any illness, as far as he could determine. A few years later, another examination disclosed intermittent high blood pressure with albuminuria still present. According to the doctor, tests made over a period of years prior to the injury failed to show any "kidney function failure." He did state, however, that for a number of years Merrifield had complained of backache and nausea in the morning, but that the nausea was in his opinion not connected with any kidney involvement.

Doctor Rulander testified that a polycystic condition of the kidneys often is never discovered until after death and that, after the injury in this case, Merrifield's kidneys, which had had the ability to take care of him, could no longer do so. In the final analysis he concluded that but for the injury, which set in motion a direct chain of events culminating in death, the deceased would have lived for an indefinite number of years. He said on this point: "I feel that the injury was the force that set into action the increased damage to the kidneys; that it brought about an increased damage to the kidneys to which Mr. Merrifield could not adapt himself." It is important to note that at no time did he testify that the injury itself, independently of the kidney infirmity, would have caused Merrifield's death. On cross-examination Doctor Rulander admitted the deceased did not have normal kidneys at the date of his injury, but only that they "functioned as healthy kidneys."

Doctor George F. Dwyer, coroner of Jefferson County, appellees' remaining expert witness, added very little to what we have already set out. He made no examination of Merrifield at any time and his answers in the form of opinions to certain hypothetical questions concerning the probable cause of Merrifield's death were evasive and inconsistent. He stated, at one time, "I think he (the deceased) died absolutely from his injury that he suffered," although shortly thereafter he conceded that death would not have occurred had the officer's kidneys been absolutely sound at the time he was kicked. Needless to say, this line of testimony can be given little, if any, weight in view of its contradictory nature.

Appellant introduced three expert witnesses: Doctor A. T. Hurst, Doctor J. A. Bowen and Doctor P. W. Cummings. The first two witnesses, as we have shown, became familiar with the medical aspects of this case when they were called into con-

sultation by Doctor Rulander after Merrifield entered the hospital shortly before his death. The last, as we have already stated, performed an autopsy on the body of the deceased. The testimony of these three experts is essentially the same in most particulars and we deem it unnecessary to set out their evidence in detail but rather we shall state in substance those parts important in rendering our decision.

These three physicians who testified on appellant's behalf were firmly convinced that the deceased died of a kidney failure, congenital in its origin, which had existed long before any injury was inflicted upon him. Doctor Hurst gave this as his view: "Having viewed his kidneys at the autopsy and realizing that there wasn't much good kidney tissue left, I would say his life, as it were, was hanging by a thread for a long time, so the chances are he wouldn't have lived very many more years." This same doctor indicated there would be no evidence of a kidney breakdown until sufficient tissue had been destroyed so as to impede the normal functioning of these organs. Doctor Bowen's evidence parallels almost word for word that of Doctor Hurst. Both Doctor Hurst and Doctor Bowen stated that death could have resulted from the combined effects of chronic infection and the blow, but they were steadfast in their opinion that the blow itself would not have been sufficient to produce such a result. On the other hand, Doctor Cummings declared positively that no kick or blow caused the condition found upon the death of Merrifield, saying in this regard: "The man's essential trouble was in the fact that he hadn't enough function and kidney tissue to carry him on, and I have no doubt at all that he would have died on the day he died even if he had been sitting at an office desk at a very easy job and had never suffered any trauma."

It is an indispensable prerequisite, in order to recover in this case, that appellees must prove not only an accidental injury but that such injury was the exclusive and independent cause of Merrifield's death. The rule is well established that the insurance company is not liable under this type of insurance coverage where the death of the insured is due to his diseased condition or where death is due both to the accident and to the disease. These principles were set forth and sustained by this Court in the case of Prudential Insurance Company of America v. Lowe, 313 Ky. 126, 230 S.W.2d 466, and in a long line of cases cited therein.

Taking the evidence in its best possible light, we conclude that the deceased died as a result of the combined effects of his accident and a pre-existing disease, namely, a bilateral polycystic kidney condition. For this reason there is no liability on the part of the insurance company.

We are of the opinion, therefore, that it was error not to have sustained appellant's motion for a peremptory instruction.

The judgment is accordingly reversed for proceedings not inconsistent with this opinion.