**PYRAMID LIFE INSURANCE COMPANY,**
Appellant,

v.

**Mrs. Mae ALEXANDER et al., Appellees.**

No. 7217.

Court of Civil Appeals of Texas.

Texarkana.

Aug. 9, 1960.

Rehearing Denied Aug. 30, 1960.

**814**

Ramey, Brelsford, Hull & Flock, Donald Carroll, Tyler, for appellant.

Baldwin & Baldwin, Phillip B. Baldwin, Marshall, for appellees.

FANNING, Justice.

Appellees sued appellant insurance company to recover for death benefits (due to the death of E. R. Alexander) provided under certain policies of insurance, for attorney fees and for 12% statutory penalty. Under the policies in question the death benefits were payable when the death resulted "directly and independently of all other causes from accidental bodily injury". Trial was to a jury upon special issues.

In response to the special issues submitted the jury found that E. R. Alexander sustained an accidental injury on or about October 25, 1957, in Harrison County, Texas (Issue No. 1); that $1,000 would be a reasonable attorney fee (Issue No. 3); that E. R. Alexander had chronic nephritis prior to October 25, 1957 (Issue No. 4), but that same did not contribute to his death on November 3, 1957 (Issue No. 5); that the injuries sustained by E. R. Alexander when a horse fell on him did not contribute to his death on Nov. 3, 1957 (Issue No. 6); that E. R. Alexander had a heart impairment prior to Oct. 25, 1957 (Issue No. 7), but that same did not contribute to his death on Nov. 3, 1957 (Issue No. 8). Special Issue No. 2, the instruction and definition accompanying said issue, and the jury's answer to said issue are quoted as follows:

"Special Issue No. Two:

"Do you find from a preponderance of the evidence, if any, that E. R. Alexander's death resulted directly and independently of all other causes from such accidental injury, if any you have so found?

"Answer 'yes' or 'no'.

"Answer: 'yes.'

"In connection with the foregoing Special Issue, you are instructed that death resulting from accidental bodily injury directly and independently of all other causes occurs when death is the reasonable and natural consequence·

of such accidental bodily injury, as the term has been defined, and but for which, such death would not have occurred. Such death can occur from accidental bodily injury directly and independently of all other causes even though disease may have been present as a secondary cause thereof."

The trial court rendered judgment for plaintiffs-appellees on the verdict of the jury in the amount of $4,549 with interest and costs. Appellant insurance company has appealed.

Appellant presents numerous points on appeal. Points 7, 8, 9, 10, 11, 12 and 13 are grouped by appellant as its first group of points. These points assail the overruling of defendant's numerous objections to the submission of Special Issue No. 2 and the explanatory instruction and definition accompanying Issue No. 2. In this connection appellant contends, among other things, that Special Issue No. 2 was not an ultimate issue, was evidentiary only, that the explanatory instruction and definition given in connection with Special Issue No. 2 constituted a general charge, were incorrect, confusing and misleading, contradictory of the policies in question, and placed a more onerous burden on the defendant as required by the policies in question.

We think appellant's points 7 through 13 inclusive do not present reversible error under this record. See McVeigh v. International Travelers Assurance Company, Tex.Civ.App., 101 S.W.2d 644, 645, err. dism., where a somewhat similar insurance clause was involved. The insuring clause in the McVeigh case insured against "loss resulting from bodily injuries effected directly, independently and exclusively, of all other causes through accidental means." McVeigh, the insured, had fallen and 17 days later died as a result of a ruptured appendix and/or peritonitis—the trial court directed a verdict for the insurance company and the Court of Civil Appeals reversed and remanded the cause, stating:

"Upon the whole, we think the evidence raised the issue, and would have justified the jury in finding that the death of Mr. McVeigh was effected directly, independently, and exclusively of all other causes through accidental means, within the terms of the policy, fairly and reasonably interpreted. Therefore hold that the court below erred in directing a verdict for defendant and in rendering judgment accordingly; hence reverse the judgment and remand the cause for further proceedings."

In overruling a motion for rehearing in the McVeigh case the Court of Civil Appeals further stated:

"Speaking of the combined effect of accident and disease, the doctrine is stated in 1 C.J. 452, 453, § 127(c), that, 'The exception operates to relieve the insurer from liability where the injury and an existing bodily infirmity concur and cooperate to produce the disability or death; but the tendency of the courts, under the settled rules of construction applicable to insurance contracts, is to interpret the clause in a manner favorable to the insured, and the insurer is accordingly held liable where the accident can be considered as the proximate cause of death, although disease may have been present as a secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, or where the accident is the true cause of death or injury and the disease but the occasion. So also if death results from the accident, the fact that but for weakness or infirmities produced by former illness or disease it would not have been fatal will not prevent a recovery'. Actna Life Ins. Co. v. Hicks, 23 Tex.Civ.App. 74, 56 S.W. 87 (writ denied).

"We think the case should have been submitted to the jury under the doctrine just quoted, and, seeing no reason to change our decision, defendant in error's motion for rehearing is overruled."

Also in this connection see the following cases in which the McVeigh case is cited: American Casualty Company v. Jones, Tex. Civ.App., 146 S.W.2d 423; 131 A.L.R. 242; Hann v. Life & Casualty Insurance Company of Tennessee, Tex.Civ.App., 312 S. W.2d 261, 265; Commonwealth Casualty & Insurance Company v. Laurence et al., Tex.Civ.App., 223 S.W.2d 337, 339; National Life and Accident Insurance Company v. Brogdon, Tex.Civ.App., 322 S.W.2d 403, 406, 408.

Appellant's points 7 through 13 inclusive, are respectfully overruled.

Appellant's points 1, 7, 8, 14, and 19 are grouped into appellant's second group of points. By these points appellant contends, among other things, that the trial court erred in overruling defendant's motion for instructed verdict, erred in overruling defendant's motion for judgment non obstante veredicto, erred in overruling defendant's various objections and exceptions to Special Issue No. 2 as submitted and defined, and erred in rendering judgment based upon Special Issue No. 2 as submitted and defined, and that the trial court erred in entering the judgment appealed from, etc.

Appellant's points 2, 3, 4, 5, 6, 16, 17, and 18 are grouped into appellant's third group of points. By these points appellant contends, among other things, that the trial court erred in submitting Special Issue No. 2 and in rendering judgment thereon because of "no evidence", "insufficient evidence", and because an affirmative answer to Special Issue No. 2 would be against the great and overwhelming weight and preponderance of the evidence, and that the jury's answers to Special Issues Nos. 5 and 6 were against the great and overwhelming weight of the evidence.

Appellees in their brief make the following statements and arguments with reference to the factual aspects of the case as follows:

"E. R. Alexander, the insured, was accidentally injured October 25, 1957, at Leigh, Harrison County, Texas, * * *. He was placed under the care of his family physician (on Oct. 26, 1957—interpolation ours), who treated him until he died November 3, 1957, (S. F. 16). Dr. Hilton had treated the deceased for injuries suffered from a horse fall January, 1957, and for a heart attack which cleared up in about a week (S.F. 35). He was treated in May, 1957, for a heart condition, and was seen again on October 25 or 26th, as a result of the injury in question (S.F. 37). At that time he gave the doctor a statement as to how the injury had occurred and he was treated for a rupture to the kidney and injury to the chest. As a result of this trauma, pneumonia resulted in the chest cavity and blood developed in the urine. (S. F. 39–40). Mr. Alexander's condition grew steadily worse until November 3, 1957, at which time he died, (S.F. 42–43). E. R. Alexander died as a result of said injury and any prior disease he had, if any, was not a contributing factor in his death (S.F. 48). The deceased did not die as a result of a heart condition, nor did it contribute to his death in any way, (S.F. 37). The death of Mr. Alexander was brought about as a result of the accidental injury in question was shown by Dr. Hilton's testimony:

" 'Q. Let me ask you this question, Doctor, and assuming for the purposes of these three questions that I am going to read to you and ask you, we will assume that Mr. Alexander received an accidental injury. In your opinion, was or not the death of Mr. E. R. Alexander the reasonable and

natural consequence of such accidental injury? A. In my opinion, it was.

" 'Q. All right, making the same assumption, in your opinion, but for the injury received by Mr. Alexander, would he have died at the time that he died? A. I don't think he would have.

" 'Q. All right, number 3, assuming for the sake of this question now that's true, and also assuming for the sake of this question that Mr. Alexander was suffering from some disease, for instance nephritis, at the time he received this injury, was this disease a primary factor in the cause of his death or a secondary factor, if a factor at all? A. I think it was, if a factor at all, it would be a secondary factor.' (S. F. 48).

\*   \*   \*   \*   \*   \*

"The deceased, E. R. Alexander, had a previous history of a heart condition and nephritis; however, neither of these conditions contributed to his death on November 3, 1957, his death resulting directly and independently from the injury in question. Dr. Hilton was the attending physician and was asked the followign question in regard to his heart condition.

" 'Q. All right, sir. Now, you did see him on the occasion of his death, which we will get into in more detail later on, did you not? A. Yes.

" 'Q. Did you have occasion to make a heart tracing on him immediately prior to his death? A. I did, yes.

" 'Q. What did you find that tracing? A. Tracing was practically normal.

" 'Q. Was his death a heart death? A. No, sir, it was not a heart death.

" 'Q. Did that have anything to do with his death? A. I don't think so.' (S.F. 36–37).

"The death of E. R. Alexander was due to uremic poison which was due to the injury to the kidney, and which in turn caused the pneumonia and malfunction of the kidney. (S.F. 43)."

Appellees introduced in evidence the policies in question. The following stipulation was also made by the parties:

*Stipulation*

"Mr. Scott Baldwin: It is stipulated and agreed that the defendant, Pyramid Life Insurance Company is doing business in Texas under a permit to do business, duly issued and authorized by the laws of the State of Texas. That, without naming them, all insurance policies covered by the pleadings in this cause, were in full force and effect at the time of the death of Mr. E. R. Alexander, and all premiums had been paid at such time, and that due proof of loss was given defendant. The amount of Hospitalization due plaintiffs is One Hundred and Eighty Nine Dollars.

"Mr. Carroll: Add, the Policies duly placed in the Stipulation, and the Policy Number designation, we will give those to you later on."

Appellees also introduced in evidence the testimony of Dr. Hilton, the physician that attended Mr. Alexander, the deceased, the testimony of the widow, Mrs. Alexander, the testimony of the witnesses Trice and Ratliff, and the further testimony of two attorneys of the Marshall Bar, with said attorneys testifying with respect to the reasonableness of the attorney fee sought by plaintiff-appellees.

The defendant-appellant produced no witnesses but offered certain documentary evidence, consisting of a certified copy of the death certificate of Mr. Alexander, and certain checks showing payment of previous claims of Mr. Alexander with

various claim papers connected therewith. The death certificate in question (which was signed by Dr. Hilton) recited among other things as follows:

"*    *    *    *    *    *    *    *    *    *    *

"Cause of Death: Enter only one cause per line for (a), (b) and (c)

17. Part 1. Death was caused by: Immediate cause (a) Acute hemorrhagic nephritis uremia — Interval Between onset and death 8 days; Due to (b) acute pneumonitis, right — 9 days; Due to (c) Contusion or rupture of rt. kidney — 10 days

Conditions, if any, which gave rise to above cause (a) stating the underlying clause last

Part II. Other significant conditions contributing to death but not related to the Terminal Disease condition given in Part I(a) Coronary insufficiency— Chronic nephritis — Autopsy Yes No: v

Deaths Due to External Violence — 19a. Accident v   Suicide   Homicide — 19(b) Describe how injury occurred. (Enter nature of injury in Part I of Part II of Item 17)

19c. Time of Injury   Hour, Day   Month, Year   10 27 57 — Loading cattle on trailer and trailer rolled back against him. * * *"

———◆———

Any and all inferences which might be inferred from the death certificate as being adverse to appellees' right of recovery, we think, were satisfactorily explained and rebutted by the concise medical testimony given by Dr. Hilton. Certainly the jury, as the triers of the facts, were authorized to believe the testimony of Dr. Hilton, and to reconcile any inconsistencies in the death certificate, if any, and the direct testimony of Dr. Hilton. It is also thought that the checks shown as payment of previous claims of Mr. Alexander and the claim papers introduced in connection therewith by defendant-appellant were apparently viewed by the jury as having slight probative force, as compared with the direct medical testimony of Dr. Hilton as to the cause of death of Mr. Alexander.

The case of Southern Farm Bureau Casualty Insurance Company v. Alexander, Tex.Civ.App., 326 S.W.2d 644, n. w. h. (written by the author of this opinion) is cited by and relied on by appellant as supportive of its position in this case. The

Southern Farm Bureau Casualty case, supra, a venue case, is clearly distinguishable from the facts in the case at bar, as in that case a certified copy of the death certificate of Mr. Alexander was introduced in evidence without limitation by Mrs. Alexander and was not followed up by any medical testimony explaining or rebutting any apparent inconsistencies in the death certificate and no other testimony of a competent nature was introduced as to the cause of death of Mr. Alexander, whereas in the case at bar the plaintiffs-appellees *did not* introduce the certified copy of the death certificate but same *was introduced* by defendant-appellant, and in the case at bar any and all inferences which might be inferred from the death certificate signed by Dr. Hilton as being adverse to appellees' right of recovery were satisfactorily explained and rebutted by the concise medical testimony given by Dr. Hilton from the witness stand, and the jury was authorized under this record to reconcile all such inconsistencies, or apparent inconsistencies, in favor of appellees.

Appellant's second and third group of points are deemed to be without merit under the record in the case and are respectfully overruled.

■ Appellant by its 15th point contends that the trial court erred in rendering judgment for 12% penalty and attorney fees, contending that no proof of demand for payment upon defendant was made as required by art. 3.62, Ins.Code, Vernon's Ann.Texas St.

The record reflects that E. R. Alexander was insured by four policies of defendant-appellant. The defendant-appellant also admitted that all premiums were paid on the policies and that proof of loss was duly and timely filed, and disclaimed liability, except that it admitted liability to the limited extent of $189.

Appellees in their brief in answer to appellant's 15th point, state in part as follows:

"The Defendant in his pleadings admitted liability as to certain provisions of the policy (Tr. 9) and necessarily had notice of Plaintiff's demand. It is difficult to conceive how Defendant could admit that it owed Plaintiff anything under her policy without any notice of her demand. Now as to other provisions of this *same* policy it says Plaintiff has not proved notice of her demand. This position of Defendant appears to the writer to be untenable. Certainly Defendant has waived any notice of further demand by these actions. Connecticut General Life Insurance Company v. Bertrand (1933 Tex. Com.App.) 65 S.W.2d 279. Surely Defendant cannot circumvent the holding in this Commission of Appeals case by saying we know of your demand as to one provision of this policy and admit that we owe you (Tr. 9). However, as to another provision of this same policy we do not know of your demand.

"Plaintiff plead facts relied on by her to recover statutory attorneys' fees (Tr. 7). Defendant is required by Rules Civil Procedure Rule 94 to plead any affirmative defense to such items. John Hancock Mutual Life Insurance Company v. Stanley, (Tex.Civ.App.) 215 S.W.2d 416. This Defendant failed to do. Also it failed to offer any proof in this regard. Certainly Defendant's admission of liability on some provisions of this policy is tantamount to Plaintiff making a prima facie case in this regard. Defendant neither plead nor offered any proof of facts to the contrary. To do otherwise would place Plaintiff in the onerous position of pleading and proving separate and distinct notice of demand to every provision of the policy. This the writer humbly suggests is not the intention nor the policy of the law in this regard. Connecticut General Life Insurance Company v. Bertrand, supra."

Also as hereinbefore stated, two attorneys of the Marshall Bar testified to the

effect that $1,000 would be a reasonable attorney's fee in the case at bar, which evidence was not objected to or contradicted by defendant-appellant.

We think appellees' answer to appellent's 15th point is well taken. Appellant's 15th point is respectfully overruled.

The judgment of the trial court is affirmed.