**MUTUAL BENEFIT HEALTH & ACCI-DENT ASSOCIATION, Petitioner,**

v.

**Mary Louise HUDMAN, Respondent.**

**No. A–10594.**

Supreme Court of Texas.

Dec. 31, 1965.

Brundidge, Fountain, Elliott & Churchill, Bobby D. Dyess, Dallas, for petitioner.

Hardeman, Smith & Foy, San Angelo, for respondent.

POPE, Justice.

The question presented is whether Mary Louise Hudman, the beneficiary of an accident policy which limited coverage to death from accidental injury "independently of other causes," may recover under the policy when the insured's death resulted from the combined effects of the injury and a preexisting disease. She obtained a judgment in a case tried before the court without a jury and the intermediate court affirmed. 385 S.W.2d 509. We reverse those judgments and render judgment that the beneficiary take nothing.

Paul Hudman, a fifty-four year old pharmacist, was the insured under an accident policy issued by Mutual Benefit Health & Accident Association which limited recovery for accidental death by these two clauses:

"The applicable benefit amount shown below will be paid to the beneficiary named in the policy * * * if covered injuries result in your death, independently of other causes, within 90 days after the date of the accident.

" 'Covered injuries' mean accidental bodily injuries which you receive while you are driving or riding in any private passenger automobile. * * *"

Hudman worked on his farm outside of San Angelo during the afternoon of April 28, 1963. The evidence supports the trial court's findings that he died in his pickup truck of ventricular fibrillation after he had worked hard on a hot day that was marked by extreme fluctuations in humidity. One of the medical witnesses testified that Hudman's "continued exertion of driving the pickup, after the extremely hard labor of the day, contributed to the onset of fibrillation." Prior to his death he was in apparently good health and had never had a diagnosis of or treatment for heart trouble. The trial court also found that arteriosclerosis óf Hudman's coronary artery was a predisposing condition and not a proximate cause of his death, and that of itself, the condition would not have caused Hudman's death.

All of the evidence shows that Hudman died from the effects of two concurring causes. The cause of death was proved by three medical experts, one called by the plaintiff and two by the defendant. Their testimony is in agreement that death resulted from fibrillation of Hudman's heart and the evidence shows that Hudman's overexertion and his diseased heart concurrently caused the fibrillation. The Court of Civil Appeals found from the facts that "[t]here is no question but that the diseased condition of Mr. Hudman's heart contributed to his death." We shall briefly summarize the testimony.

Dr. Lloyd R. Hershberger testified about an autopsy he performed in the presence of two other doctors and the attorneys for the parties. His report described the anterior descending branch of the left coronary. It stated that "2 cm. below its origin, it becomes quite narrow and is reduced to a slit-like opening. * * * I would estimate that the diameter of the channel is about one-eighth of that which is normal. This descending branch then returns to a more normal diameter as it is examined distal to this narrowing, but about 4 cm. distal to the origin, we again find a second area of extreme narrowing. This area shows eccentric thickening of the blood vessel wall with a very narrow lumen that I would again estimate at about one-eighth the normal diameter." He testified that Hudman's heart disease was very significant and a contributing cause of the death. He said that the primary cause of death was "a combination

of pre-existing heart disease and the physical exercise performed the day of his death." When questioned more specifically, he said that both causes were primary; neither was remote. He considered the two causes of death equal.

Dr. John L. Goforth was not present at the autopsy but testified as an expert about it. He said that a person with the kind of heart Hudman had, doing the heavy labor to which he was not accustomed and working on the hot humid day, overtaxed the function of his heart. He said that Hudman, in the absence of heart disease, probably would not have died by reason of the exertion. He expressed the opinion that one with the degree of Hudman's arteriosclerosis is in imminently serious trouble and the disease was alone sufficient cause for sudden death.

Dr. P. O. B. Montgomery, who was present at the autopsy, testified: "In my opinion, his death was caused by ventricular fibrillation, and the cause of the ventricular fibrillation was the unusual amount of work that he did under the emotional pressure that he did it, on a day when the temperature was unseasonably hot, and the humidity showed an extraordinary variation. These factors, coupled with his coronary arteriosclerosis disease, caused his heart to fibrillate, and this was the immediate cause of his death." He said that the decreased blood supply caused by the narrowing of the artery in and of itself would not have caused the death, but he also said that the decreased blood supply and the increased demand for blood by reason of the exertion "and the impinging of these two things caused his heart to fibrillate." He said that the physical stress and the disease combined to cause Hudman's death.

Plaintiff, Mary Louise Hudman, argues that there is evidence that heart disease did not cause the death because an immediate heart massage would have restored the rhythm of the heart, that twenty-five to thirty per cent of all males have equally advanced arteriosclerosis as that of Hudman at his age, and the disease was dormant and only a predisposing condition. From this, she reasons that there was evidence to support the finding, that overexertion caused the fibrillation, which caused death. This, however, is not what the doctors unanimously testified. They said that it was overexertion and disease that caused fibrillation. It took two things to produce the fibrillating process which produced death. Overexertion or disease alone, they said, did not produce the fibrillation.

 Plaintiff, Mary Louise Hudman, failed to prove an accidental bodily injury, "independently of other causes." This limitation upon the cause of death can not be ignored, because it was the basis of the agreement. Pan American Life Ins. Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 790 (1960); United American Ins. Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160, 164, 84 A.L.R.2d 367 (1960). Plaintiff's argument is that the phrase means the same as mere proximate cause which can be a concurring cause. While it is true that the cause must be proximate rather than remote, the real question is whether the beneficiary must prove the accidental injury was a proximate cause or the sole proximate cause. "Independently" means "solely," "only," "standing alone." North American Accident Ins. Co. v. Miller, 193 S.W. 750, 756 (Tex.Civ.App.1917, writ ref.); Western Indemnity Co. v. MacKechnie, 185 S.W. 615, 618, 619 (Tex.Civ.App. 1916, no writ), 214 S.W. 456, 463 (Tex. Civ.App.1919, no writ); accord, Continental Casualty Co. v. Fountain, 257 S.W. 2d 338, 344 (Tex.Civ.App.1953 writ ref.).

 The logical meaning of the policy terms limits the coverage to accidental bodily injuries which are the sole cause of death. We are dealing with death under an accident policy. It obligated the insurer to pay " * * * if covered injuries (accidental bodily injuries) result in your death, independently of other causes. * *" The coverage is for accidental bodily injuries. The term "other causes" would mean non-accidental causes. The policy

does not purport to cover non-accidental bodily injuries such as Hudman's heart disease. A reasonable construction of the accident policy is that it covered accident-caused injuries rather than non-accident-caused injuries. We reach the same result when we look at the whole phrase "independently of other causes." The phrase does not mean that the insurer agreed to provide coverage for a death which results from accidental bodily injuries though "dependent upon other causes." Logically this is what the beneficiary here argues. Her argument would compel the result that overexertion (the accidental bodily injury), though dependent upon heart disease (the other cause) was yet "independent of other causes." The idea that one factor is independently a cause leaves no room for the idea that it yet may be dependently caused. An independent cause does not mean that it is a joint, contributing or concurring cause.

■ All of the evidence shows that two causes proximately concurred to produce death and the policy limited its coverage to one cause, accidental bodily injury. It solves nothing when applying a sole-cause test, to resort to a but-for test as the trial court did and as was done in Pyramid Life Ins. Co. v. Alexander, 337 S.W.2d 813 (Tex. Civ.App.1960, writ ref., n. r. e.). When we have two concurring factors which produce death, one within and the other without the policy coverage, results under such a test would depend upon the factor to which the test is applied. It is a true statement that Hudman's death would not have occurred but for his overexertion, the bodily injury and accidental cause. It is also true that his death would not have occurred but for the pre-existing heart disease, the non-accidental cause. If we apply the but-for test to the accidental bodily injury, we can say that the death would not have occurred but for the overexertion and the plaintiff would win. When we apply the same test to the other concurring cause, the non-accidental heart disease, we get an opposite result. This is so because the death would

not have occurred but for the non-accidental heart disease, and the plaintiff would lose. It took both causes to produce death and but for both, death would probably not have occurred. We conclude that by definition of the policy terms and by logic, the policy coverage was limited to accidental bodily injuries which must be the sole cause of death.

The decisional law of Texas is in accord with these principles. We must put aside as irrelevant those cases which construe policies which provide coverage upon proof of mere proximate cause. Those are cases which do not have a limiting clause such as "independently of other causes." Home Ben. Ass'n of Paris, Tex. v. Smith, 16 S.W. 2d 357, 359 (Tex.Civ.App.1929, writ ref.); Pledger v. Business Men's Accident Ass'n, 228 S.W. 110, 113 (Tex.Com.App.1921). Nor are we concerned with precedents which discuss the other and different requirement found in many policies that the injury result from "external, violent and accidental means." Pan American Life Ins. Co. v. Andrews, 161 Tex. 391, 340 S.W. 2d 787 (1960).

Continental Casualty Co v. Fountain, 257 S.W.2d 338 (Tex.Civ.App.1953, writ ref.), discussed an accident policy which limited coverage to bodily injury "which is the sole cause of the loss which is effected solely through accidental means * * *." The word "sole" was not disregarded. The Court held that the plaintiff failed as a matter of law to discharge her burden that death resulted solely from accidental means and not from cancer. In Robinson v. Aetna Life Ins. Co., 276 S.W. 900 (Tex. Com.App.1925), the policy insured against loss "resulting directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means." Plaintiff contended that the insured died from a fall on his head but the defendant claimed that death resulted from apoplexy. In affirming the right of defendant to an issue inquiring whether apoplexy caused or contributed

directly to the death, the Court held: "* * * the burden was upon the plaintiff to show that the death of Charles W. Robinson resulted directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means. If apoplexy caused or contributed directly to cause the death, the plaintiff could not recover, and a finding to that effect was therefore most material to the defense." Substantially the same clause was present in North American Accident Ins. Co. v. Miller, 193 S.W. 750 (Tex.Civ.App.1917, writ ref.). Measured by the same rule, the Court upheld findings that death was solely caused by accidental injury, a blow to the heart, and not from arteriosclerosis caused by syphilis. Other authorities which construe similar limiting clauses hold that independent or sole cause excludes the idea that concurring causes suffice. Standard Life & Accident Ins. Co. v. Roberts, 318 S.W.2d 757 (Tex.Civ.App.1958, writ dism.); Combined American Ins. Co. v. Tunnell, 311 S.W.2d 76 (Tex.Civ.App.1958, no writ); Worley v. International Travelers Assur. Co., 110 S.W.2d 1202 (Tex.Civ.App.1937, writ dism.); Maryland Casualty Co. v. Glass, 29 Tex.Civ.App. 159, 67 S.W. 1062 (Tex.Civ.App.1902, no writ).

Most American courts are in accord with the views here expressed. The following authorities are representative and illustrative of these principles: White v. New York Life Ins. Co., 145 F.2d 504 (5th Cir. 1944); Ryan v. Continental Casualty Co., 47 F.2d 472, 473 (5th Cir. 1931); Commonwealth Life Ins. Co. v. Byck, 268 S.W.2d 922 (Ky.Ct.App.1954); Mutual of Omaha Ins. Co v. Deposit Guaranty B. & T. Co., 246 Miss. 640, 151 So.2d 816 (1963); Penn v. Standard Life Ins. Co., 160 N.C. 399, 76 S.E. 262, 42 L.R.A.,N.S., 597 (1912); Scharmer v. Occidental Life Ins. Co., 349 Mich. 421, 84 N.W.2d 866 (Mich.1957); Spangenburg v. Aetna Life Ins. Co., 306 P.2d 707 (Okl.1957); Britton v. Prudential Ins. Co. of America, 205 Tenn. 726, 330 S.W.2d 326, 82 A.L.R.2d 605 (1959); Evans

v. Metropolitan Life Ins. Co., 26 Wash.2d 594, 174 P.2d 961 (1946); 131 A.L.R. 240, 242. The rule is cogently summarized in 1A Appleman, Insurance Law and Practice, § 403:

"As a general rule, it has been stated that if there is a pre-existing disorder or illness at the time an injury is received, recovery may still be had if the injury was severe enough to have caused the entire damage or considerable damage, but not if the disease was the proximate cause or principal cause thereof. From this, it has been held that where a disease condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is to cause the death or disability. This has been particularly supported where the death or disability would not have resulted from the external injury alone, but, with the combination of injury and disease, the loss is produced. * * *"

■ The result we reach in this case is compelled by the terms of the policy and the evidence of all the physicians. We do not hold that every preexisting frailty or enfeeblement of the human body which coexists with an accidental injury will defeat recovery under such policies as Hudman's. To do so would defeat recovery in most instances because mere senescence makes all flesh heir to infirmity and weakness. Policies are, to use Cordozo's phrase, issued to those who are neither "an Apollo or Hercules." Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914 (1930). Recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury. Howe v. National Life Ins. Co., 321 Mass. 283, 72 N.E.2d 425, 170 A.L.R. 1254 (1947). In most cases, the competent evidence of qualified persons separates the real causes

of death or injury from mere conditions or at least raises issues for the determination by the fact finder. 29A Am.Jur., Insurance, §§ 1211–1213; 82 A.L.R.2d 614, 623; 56 A.L.R.2d 806–808; 131 A.L.R. 266–269; 1A Appleman, Insurance Law & Practice, § 403, p. 88. This is not our case. All the medical experts agreed that the accidental injury concurred with a preexisting serious disease to cause the death.

Petitioner Hudman relies upon Tix v. Employers Casualty Co., 368 S.W.2d 105 (Tex.Civ.App.1963, no writ); Pyramid Life Ins. Co. v. Alexander, 337 S.W.2d 813 (Tex.Civ.App.1960, writ ref. n. r. e.); National Life and Accident Ins. Co. v. Brogdon, 322 S.W.2d 403 (Tex.Civ.App. 1959, no writ); and McVeigh v. International Travelers Assurance Co., 101 S.W. 2d 644 (Tex.Civ.App.1936, writ dism.) We disapprove the language in those cases which is inconsistent with this opinion.

It is our conclusion that the beneficiary failed to prove that death was the result solely of Hudman's overexertion, because all of the evidence shows that preexisting serious heart disease and overexertion concurred to cause the fibrillation of Hudman's heart and in turn, his death. Therefore, we reverse the judgments of the courts below and render judgment that the plaintiff take nothing.

GREENHILL, Justice (concurring).

The insurance coverage purchased covered "accidental bodily injuries which you receive while you are driving or riding" in a car. So the insured person must receive some accidental injury in the automobile while driving. In my opinion there is no evidence of any accidental injury which the insured received while driving. The car was not struck. The car was being driven in an ordinary manner when the insured slumped over the wheel and died. His son grabbed the wheel and brought the car to a stop without incident. Certainly driving a car is not an accident. We do not drive down the highway, all the while having an accident as we drive. The overexertion in which the insured engaged took place on the farm, outside of the automobile. For these reasons, the Court correctly denied recovery on the policy.

It seems to me, therefore, that the Court goes to unnecessary length in saying that it must be proved that no other bodily conditions contributed to the death of the insured. Suppose, for example, that a man of middle age with a mild heart condition, known or unknown, is in an automobile accident, is thrown through the windshield, and breaks several bones. There is proof by autopsy that the insured had the imperfect heart and that a 100-percent healthy young person would have survived. But the older person with the heart condition died. Or suppose a person has hemophilia so that he bleeds more than other people. He is in a serious automobile accident, bleeds a lot, and dies soon thereafter. The proof is made, and it is established, that a well young person would not have died under the same conditions. To hold that there could be no recovery would be to say that accident victims must be in good health when they get accidently killed; i. e., if *any* physical defect or condition, known or unknown, contributed to the death of the victim, to whatever degree however small, the insured or his beneficiary could not recover. I am afraid this opinion would be a precedent for saying that there could be no recovery in such cases even though the insured actually died in, or immediately after, an automobile accident.

Many persons of middle or old age have something wrong with them. Accident insurance companies should have to take the people they insure as they find them unless there are some other more specific provisions as to good health in the policy, approved by the Board of Insurance.

The insurance contract speaks only in terms of "other causes." It is unnecessary

here to say that any contributing physical defect, however small, is a *cause* within the meaning of the policy. They might well be classified as *conditions*.

WALKER and STEAKLEY, JJ., joining.