The **PRUDENTIAL INSURANCE COMPANY OF AMERICA,** Appellant,

v.

**Rose Ellen SCHROEDER,** Appellee.

No. 26366.

United States Court of Appeals
Fifth Circuit.

June 24, 1969.

On Rehearing Aug. 7, 1969.

William Duncan, Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., R. Philip Schulze, Asst. Counsel, Houston, Tex., for appellant.

Bert Bader, Woodruff, Hill, Bader & Kendall, David M. Kendall, Jr., Dallas, Tex., Richard T. Marshall, El Paso, Tex., Bader, Wilson, Menaker & Cox, Dallas, Tex., for appellee.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from a judgment, entered on a jury's verdict, allowing recovery for "double indemnity" for accidental death under three life insurance policies.[1]

The issues presented for our decision are: (1) whether the evidence was sufficient to support the jury's determination that the insured's death resulted directly and independently of all other causes from accidental injury, and, if so, (2) whether the district court erred in excluding the certificate of death and certain other evidence offered by the defendant.

■ The test of sufficiency of the evidence is that recently prescribed in Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365 applied in the light of the burden resting on the beneficiary to establish by a preponderance of the evidence that death resulted from bodily injuries caused by accident, directly and independently of all other causes.[2]

The evidence showed without dispute that the insured died within a matter of minutes after having an accident with his automobile. In that accident the insured received head injuries, and also a blow to his chest, probably from the steering wheel which was bent. A physician testified that a blow on the chest could cause a heart stoppage.

The question of whether the insured had previously suffered from heart disease was disputed. The widow beneficiary, who had known and worked with the insured for many years and had been his wife for three years, testified positively that he did not have any sort of heart trouble. An electrocardiogram taken 28 months before death was normal. A bottle of nitroglycerin tablets, used to allay angina pains, was found with the cap off laying on the floor board of the car and some of the tablets were scattered on the right hand side of the car in the front of the floor board. The widow testified that the insured, a physician, carried a first aid kit in the car containing a bottle of nitroglycerin tablets. Laying aside for the moment the circumstances of the accident, we conclude that the jury could reasonably have determined that the insured had not previously suffered from heart disease, and that death resulted from the accident.

The strongest evidence that death resulted directly or indirectly from some non-accidental cause came from the circumstances of the accident itself. No other car was involved. The accident occurred in the morning part of the day on a straight paved highway after the insured apparently lost control of his car while it was "traveling at regular speed." The sole eye witness, while admitting that "I can't judge distance," testified: "I would say about half a mile, I saw this car kind of weaving a little bit * * *." It "started coming towards my lane * * * and then weave back into his lane and back again

1. Two of the policies provided for payment of "Accidental Means Death Benefit" upon receipt of "due proof that the death of the Insured occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means * * *." The third policy provided for an "Accidental Death Benefit" payment upon "due proof that the insured's death resulted, directly and independently of all other causes, from accidental bodily injury."

2. Mutual Benefit Health & Acc. Ass'n, v. Hudman (Tex.1965), 398 S.W.2d 110; Republic National Life Ins. Co. v. Bullard (Tex.Civ.App.1966), 399 S.W.2d 376; Aetna Life Ins. Co. v. Kegley, 5 Cir. 1967, 389 F.2d 348.

into my lane." The witness pulled over to his right. "As he approached me * * * he was on his lane going the other way." The vehicle then left the road, traveled for about a city block through a fence and brush, jumped two cement curbs across a private entrance, and came to rest after snapping off a tree estimated to be from 5 to 8 inches in diameter. There were no marks on the highway or other evidence of any attempt to stop the car.

Just what caused such erratic behavior of the automobile over such a considerable distance, approximately one half mile before leaving the roadway and about a city block thereafter, could not be proved or explained. There are many possibilities. After the accident the steering wheel was found bent. That may have accounted for the bruise on the insured's chest, but the car could still be guided and controlled by the steering wheel as it was removed by the wrecker. The bending of the steering wheel was most probably caused by the force of the collision with the tree. Certainly there is no substantial evidence that it was defective at the time this accident began, that is, when the car started weaving back and forth on the highway. Even if the jury could reasonably have concluded that the steering mechanism was defective, there was no evidence of any defect in the brakes and, if the driver were not disabled, the car could be brought to a stop within half a mile. After the accident both front tires were found blown out, but it was just as probable, or more so, that this was the *result* of the accident as that it was the *cause*. Again, even with a blown out tire, it seems unreasonable to find that an automobile cannot be brought to a stop over such a long distance. In short, the plaintiff introduced no evidence to show that the accident was caused by any mechanical failure of the car.

It is suggested that there may have been other plausible explanations. Perhaps a bug flew in the window or the insured dropped something which caused him to lose control, or he went to sleep at the wheel. These are possibilities, but to assume their existence is merely to speculate, and, further, the considerable distance that the car traveled after it began weaving is hardly consistent with any such explanation. Such surmises do not meet the heavy burden resting on the beneficiary under Texas law to establish by a preponderance of the evidence that death resulted from an accident directly and independently of all other causes.

In construing a somewhat similar policy, the Texas Supreme Court has said:

"The logical meaning of the policy terms limits the coverage to accidental bodily injuries which are the sole cause of death. We are dealing with death under an accident policy. It obligated the insurer to pay ' * * * if covered injuries (accidental bodily injuries) result in your death, independently of other causes. * * *' The coverage is for accidental bodily injuries. The term 'other causes' would mean non-accidental causes. The policy does not purport to cover non-accidental bodily injuries such as Hudman's heart disease. A reasonable construction of the accident policy is that it covered accident-caused injuries rather than non-accident-caused injuries. We reach the same result when we look at the whole phrase 'independently of other causes.' The phrase does not mean that the insurer agreed to provide coverage for a death which results from accidental bodily injuries though 'dependent upon other causes.' "

Mutual Benefit Health & Acc. Ass'n v. Hudman, Tex.1965, 398 S.W.2d 110, 112, 113.

The Court of Civil Appeals of Texas has written at length on the issue of burden of proof:

"The burden is on the beneficiary to establish by a preponderance of the evidence that death resulted from bodily injuries caused by accident, directly and independently of all other causes. This, of course, encompasses a

showing that death was not contributed to by existing bodily infirmity. [Citations omitted]

"Appellee relies on circumstantial evidence to show that the deceased suffered accidental bodily injuries and that they were the proximate cause of his death. Of course, resort may be had to circumstantial evidence to establish ultimate facts. [Citations omitted] If from all the circumstances in evidence it may reasonably be concluded that death resulted from accidental injuries and was not contributed to by bodily infirmities, the claimant has discharged her burden. The claimant need not exclude every other reasonable hypothesis but if, in the light of all of the evidence, it can be said that accidental injuries, independently of all other causes and not contributed to by bodily infirmity, probably caused deceased's death, then there is evidence of probative force. It is a matter of probabilities in the light of all the evidence.

"However, a court or jury may not be left to speculate. The evidence must give rise to more than a surmise or suspicion that death resulted solely from accidental injuries. If there is no direct evidence as to the existence of an ultimate fact and the proven circumstances are consistent with either of two theories and there is nothing to show that one rather than the other probably is correct, then neither is proven. [Citations omitted]."

Republic National Life Insurance Co. v. Bullard, 1966, 399 S.W.2d 380.

■ The last paragraph of this quotation may relate as much to judge-jury relationship in determining the sufficiency of the evidence, a matter which this Court holds to be controlled by federal law, Boeing Co. v. Shipman, *supra*, as it does to burden of proof which is substantive and controlled by state law. 1A Moore's Federal Practice ¶ 0.-

314[2]. That paragraph is not, however, inconsistent with the standard of sufficiency of the evidence in diversity cases established by this Court's en banc decision in Boeing Co. v. Shipman. *Boeing* also held the FELA standards inapplicable and disagreed with the use in diversity cases of the standards of Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.[3]

■ In short, it seems to us that the circumstances of this accident were such that no reasonable-minded juror could escape the conclusion that a car which behaved so erratically over such a long distance had a disabled driver. The cause of that disability was the real cause of the accident. The plaintiff failed to meet the burden of showing that the cause of the insured's disability which precipitated the accident was itself accidental. As we understand the Texas state law, that burden rested on the plaintiff. We are forced to the conclusion that the district court erred in denying the defendant's motion for directed verdict and for judgment notwithstanding the verdict.

We do not reach the questions of whether the district court properly excluded the certificate of death and certain other evidence offered by the defendant. The judgment of the district court is reversed with directions to grant the defendant's motion for judgment notwithstanding the verdict.

Reversed with directions.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

RIVES, Circuit Judge (concurring specially):

I remain of the opinion expressed at great length in my dissent to Boeing

3. See the effect of *Lavender* on Pennsylvania R. R. Co. v. Chamberlin, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819, as expressed in Planters Mfg. Co. v. Protection Mutual Ins. Co., 5 Cir. 1967, 380 F.2d 869, 873. *Planters Mfg. Co.* has now been superseded by the en banc decision in *Boeing, supra.*

**1320**

Company v. Shipman, 5 Cir. 1969, 411 F.
2d 365, that the standards of sufficiency
of the evidence to support a jury verdict
enunciated in Lavender v. Kurn, 1946,
327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916,
are constitutional standards required by
the Seventh Amendment, and hence ap-
plicable in diversity cases. If those
standards were applied in this case, then
I think rehearing should be granted and
the judgment affirmed. I concur in the
denial of rehearing solely because I con-
sider myself bound by this Court's de-
cision in Boeing Company v. Shipman,
*supra.*