**KEY LIFE INSURANCE COMPANY OF SOUTH CAROLINA, Appellant,**

**v.**

**Johnie Mae MURRAY, Appellee.**

**No. 7503.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 1, 1973.

Rehearing Denied Nov. 29, 1973.

John E. Kinney, Woodville, for appellant.

Seale & Stover, Jasper, Bill A. Martin, Newton, for appellee.

KEITH, Justice.

Defendant below appeals from a judgment entered following a trial by jury and we will designate the parties as they appeared in the trial court.

At all times material to this suit, there was in full force and effect a policy of in-

surance issued by defendant wherein it agreed to pay to the named beneficiary therein the principal sum of fifteen thousand dollars upon death of the assured. One of the provisions in the policy, pleaded by defendant, read:

"This policy pays benefits for losses resulting directly and independently of all other causes from accidental bodily injuries sustained solely through external, violent and accidental means . . . ."

C. C. Murray, the insured, was a logging contractor whose work was physical in nature and done in the woods of East Texas. He had a heart attack in 1966, and was treated by a specialist in Beaumont, Dr. Thomas A. Lombardo. He was also examined by other specialists in the Methodist Hospital in Houston who confirmed the diseased condition of his heart.

On March 8, 1972, the assured arose at his usual early hour, ate a normal breakfast, and went with some members of the crew to a place in the southern part of Newton County where he was to engage in logging operations. In addition to assured, there were four other men engaged in the operation, two were cutting the logs, one operating the skidder, another was hauling the logs to the mill. The assured ordinarily operated the loader but, upon the day in question, he was trimming knots off the logs.

The assured made no complaint during the day of feeling ill or tired; but, around two in the afternoon, he walked off the job. As the witness Nathan Myers, Jr., one of the men in the crew, put it: "He just walked the line. I mean that wasn't nothing out of the ordinary. He did that all the time anyway." When assured failed to appear, Myers became worried and began hunting for him about three

o'clock and continued for an hour and a half, but was unable to find him.

He met a game warden in the woods and they drove to a grocery store some five or six miles from where he had been working and sought outside help in finding Mr. Murray. Around ten o'clock that night the searching party, including Myers, found Mr. Murray on an old dirt logging road. His eyes were open, he was lying upon his back. There were no marks on him nor did he look as if he had been hit with anything. His clothes were not torn, but his cap was lying near his head.

Myers was firm in his testimony that Mr. Murray had had a normal day, and had made no complaints of being ill or feeling bad. Carroll Myers, Nathan's brother, was summoned by Nathan to help in the search for Mr. Murray and was in the party that found the body of the deceased. He corroborated Nathan Myers as to the deceased lying on his back, his cap about a foot from his head, his eyes open, and no indications that anything had fallen on or hit him. His clothes were not torn and there was no blood noticeable. He was asked: "Was there anything in the physical condition of either Curtis [deceased] or the ground to indicate what happened to him?" and answered, "No, Sir." He said that he did not "have any way of knowing what killed him."

No autopsy was performed upon the body of the deceased and the trial court properly excluded the death certificate tendered by the defendant.[1] No witness having actual knowledge of the facts testified as to the cause of Mr. Murray's death. Dr. Lombardo, whose deposition was taken by defendant, testified:

"Q. Knowing what you did about the previous medical history of Curtis

1. The death certificate was signed by a justice of the peace acting as coroner and was a certified copy of a certificate filed in the office of the County Clerk. It was not admissible under the provisions of Rule 54a of Art. 4477, Vernon's Ann.Civ.St.Texas Reserve Life Insurance Company v. Dees, 368 S.W.2d 886, 888 (Tex.Civ.App., San Antonio, 1963, error ref. n. r. e.). Cf. Pan American Life Insurance Company v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 793 (1960).

Coleman Murray, if he were found lying on his back in the woods, no sign of violence about his body, his eyes open, could you give us a *probability* as to the cause of his death that you would deduce from those facts?

"A. I would have assumed that Mr. Murray died a cardiac death."[2]

Thus, it will be seen from this resume of the evidence viewed in a standpoint most favorable to the plaintiff, there was no competent evidence in the record that Mr. Murray's death was caused by a heart attack, much less that it was caused by over-exertion. With the record in this condition, plaintiff offered Dr. Lee T. Popejoy, Jr., a general practitioner who had never seen the deceased or his medical records.

Counsel then propounded a lengthy hypothetical question, including therein findings from the medical records of the Methodist Hospital showing a damaged heart; that on the day of his death Mr. Murray "operated a loader and he had been trimming knots off logs; that about two o'clock that afternoon he walked off to check lines and roads for cutting; and a search for him began about three o'clock, about an hour thereafter; that Mr. Murray exerted himself by operating the loader and by operating a chain saw, which is strenuous physical exertion, over-all being the type of exertion which he ordinarily would not encounter." The doctor was asked:

"[N]ow based on that set of facts do you have an opinion based on reasonable medical probability as to whether or not this fatal heart attack of Mr. Murray's resulted directly in and independently from all other causes from the exertion?"

To which Dr. Popejoy responded: "I think the question was was the exertion the cause of the heart attack?" Being assured that was the question, Dr. Popejoy continued:

"I think this is the question, and I think there's no question here that the man had a condition of a heart that was succeptible [sic] to some problems. However, apparently he'd been doing all right with his normal routine with his heart as the condition existed and was involved in some extra exertion, apparently from what you said, that morning, so it would be the most medical probable thing that the exertion tended to cause the—to cause the heart attack, considering the condition that was working upon him."

This testimony, which was the only evidence in the record on the point, constituted no evidence that the death of Mr. Murray resulted "directly and independently of all other causes from accidental bodily injuries sustained solely through *external, violent* and accidental means", as set out in the policy. We have previously mentioned the condition of the deceased when found many hours after he left the job, the complete absence of any marks upon the body, and the lack of competent testimony showing the cause of his death.

The jury found that: (1) the deceased sustained an accidental bodily injury; (2) that the fatal heart attack "resulted directly and independently of all other causes from such accidental bodily injury"; (3) that deceased had a diseased heart at the time of his death but (4) failed to find that the diseased condition of his heart was a proximate cause of his death.

■ Defendant challenges the jury's finding to special issue number two, that the death of Mr. Murray "resulted directly and independently of all other causes from such accidental bodily injury" with a no evidence point. We are required to con-

2. All emphasis added unless otherwise indicated.

Even under the much more liberal rules prevailing in workmen's compensation cases, causation must rest on reasonable probabilities, not speculation or conjecture. Insurance Company of North America v. Myers, 411 S.W.2d 710, 713 (Tex.1966); Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43, 46 (Tex.1969).

sider only the evidence supporting the finding in passing upon such point and that has been set out in a manner most favorable to the plaintiff. Thus we have omitted from consideration, or even mentioning, the testimony of his personal physician who treated him during his lifetime, the testimony of the heart specialist in Beaumont who made extensive tests before his death, as well as the results of the findings in the Methodist Hospital in Houston. Such testimony offered by the defendant is not entitled to consideration under this "no" evidence point.

Paraphrasing the language of Justice Pope in Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110, 112 (Tex.1965): "Plaintiff [Johnie Mae Murray] failed to prove an accidental bodily injury, 'independently of other causes.' This limitation upon the cause of death can not be ignored, because it was the basis of the agreement."

This authoritative case by our court of last resort is controlling in the case at bar. Justice Pope continued: "We conclude that by definition of the policy terms and by logic, the policy coverage was limited to accidental bodily injuries which must be the *sole* cause of death." (398 S.W.2d at 113)

In *Hudman,* supra, Justice Pope quoted extensively from 1A Appleman, Insurance Law and Practice, § 403 (398 S.W.2d at 114), and the footnote (in Appleman) supporting the first sentence in the quotation includes two cases from Wisconsin: Herthel v. Time Ins. Co., 221 Wis. 208, 265 N. W. 575 (1936), and Egan v. Travelers Ins. Co., 224 Wis. 596, 273 N.W. 68 (1937), both of which are in point in the case at bar. In *Egan,* the Court referred to the earlier *Herthel Case,* and quoted therefrom at length, these being the words of the Court:

"This court there [in *Herthel*] laid down a test of sole cause which is simple, easily understood by a jury, and which should be given in every case where the issue is whether the accident is the sole

or exclusive cause of a disability or has caused it exclusively or independently of all other causes. The rule is there stated as follows: '* * * if a disease or bodily condition exists and an accident occurs, to constitute the accidental means the sole cause of an injury, under policies like the one in suit, it is not necessary that the injury or the results thereof would have been as severe as they were had the disease or bodily condition not existed, but it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed. *But, if no considerable injury at all would have resulted had the insured not been afflicted with the existing disease or condition, the accidental means cannot be considered as the sole cause of the injury.*'" (273 N.W. at 70)

As was said by Justice Pope in *Hudman,* supra, "We are dealing with death under an accident policy. It obligated the insurer to pay [and here we quote the provisions of the policy at bar: "for losses resulting directly and independently of all other causes from accidental bodily injuries sustained solely through *external, violent* and accidental means"]. The coverage is for accidental bodily injuries. . . . The policy does not purport to cover non-accidental bodily injuries such as Hudman's heart disease." (398 S.W.2d at 112–113)

Dr. Popejoy's testimony previously set out in detail does not meet the test of *Hudman.* His testimony—upon which plaintiff's recovery must be based—that "it would be the most medical probable thing that the exertion tended to cause the—to cause the heart attack, considering the condition that was working upon him"—does not meet the test laid down in the authorities herein discussed.

■ Considering the uncontradicted testimony of the Myers brothers as to the condition of Mr. Murray's body when found, his admittedly diseased heart, the total absence of bodily injury (as distin

guished from the inference of overexertion), and the hypothetical question propounded to Dr. Popejoy as well as his answer thereto, we conclude, as did Justice Pope in *Hudman*:

"It is our conclusion that the beneficiary failed to prove that death was the result *solely* of Hudman's overexertion, because all of the evidence shows that preexisting serious heart disease and overexertion concurred to cause the fibrillation of Hudman's heart and in turn, his death. Therefore, we reverse the judgments of the courts below and render judgment that the plaintiff take nothing." (398 S.W.2d at 115)

Defendant's first point is sustained and the judgment of the trial court is reversed and judgment rendered for defendant.

Reversed and rendered.

DIES, Chief Justice (dissenting).

I respectfully dissent. I would hold the evidence insufficient and remand the case for a new trial. But, to render it on a 'no evidence' point is to completely disregard the opinion of Dr. Popejoy and to excise it from the record. This we have no authority to do.